# Hegarty's Appeal.

1. A testator devised to religious uses and died within a month of the date of his will. No caveat nor action was entered within five years after the probate of the will. *Held,* that the heirs at law were not concluded by sect. 7, of Act of April 22th 1856, from claiming the devised property.

2. The will was not proved until more than a month after it date; this would not vary the result as to devisees although the time of the death was to be established *dehors* the will and record.

3. A provision in a will which is illegal and void will not prevent its probate.

4. The adjudication of the register in the probate of a will on all matters within his jurisdiction is conclusive, if not appealed from within the time limited by law.

5. The register's jurisdiction in the probate of wills is confined to the questions whether the paper has been legally executed and is the will of the testator, leaving all other questions to subsequent decisions.

6. Statutes of limitation affect the remedy not the title.

7. The will gave the executor no power and imposed on him no duty as to the real estate. An Act of Assembly procured without the consent of the heirs authorized him to sell the real estate, and hold the proceeds in trust to pay expenses, debts, &c., and then to pay the balance to the parties entitled under direction of the Orphans' Court. *Held,* that the act was unconstitutional.

8. The legislature cannot against the consent of persons *sui juris* seised of a vested estate, authorize the sale of their real estate.

| | |
|---|---|
| 75 | 503 |
| 156 | 20 |
| 75 | 503 |
| 159 | 573 |
| 75 | 503 |
| 164 | 522 |
| 75 | 503 |
| 181 | 413 |
| 75 | 503 |
| 199 | 142 |
| 75 | 503 |
| 217 | 5429 |

[Hegarty's Appeal.]

March 25th 1874.    Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.    WILLIAMS, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Clearfield county :* In Equity : No. 136, to January Term 1873.

The proceedings in this case were commenced by a bill filed May 31st 1870, by Henry Whiteside and Mary his wife in her right, James Hegarty, John M. Jordan, and Jane his wife in her right, and as assignee of George Hegarty, Henry Hegarty, Joseph Hegarty, William Thomas and Isabella his wife, in her right, Mary Jane McCullough, Louis McCullough, Cortes Bell and Matilda his wife, in her right, and Agnes Bell, against Samuel Hegarty in his own right, and as executor, &c., of Samuel Hegarty, deceased, William Albert, George Albert, and Henry Albert, and the United Presbyterian Church of North America.

The facts under which the controversy arose are as follows :—

Samuel Hegarty, the decedent, on the 4th of March 1864 made his will, and died March 21st 1864, seised of a large quantity of real estate ; the will was proved April 6th 1864, and letters testamentary granted to Samuel Hegarty—a defendant—one of the executors named in it.

By the will he gave to his wife Lydia all his personal estate and "the proceeds or income of my farms during her life."   "To the Presbyterian Church at the Cross-Roads as capital stock," he gave one-fourth the timber on his land ; to the Old School Presbyterian Church one acre and a half of land for a site for a church and parsonage ; and if a church should not be built, then for a parochial school.   He gave to his adopted daughter Sarah Hegarty 100 acres of land.   He gave further to the Old School Presbyterian Church three-fourths of the timber on his other lands, part for building a church or parochial school on the lot devised to the church, and the balance as capital stock to support the church or school.

The will further provided :—

"Item 7. I will and bequeath to the Cross-Roads Church, after the death of my wife, one-fourth of all my lands, not already bequest, as an annuity.

"Item 8. I will and bequeath to the Old School Presbyterian Church the other three-fourths of all my lands, after the death of my wife, as an annuity for the support of a church or parochial school on the lot bequest to said church. * * *

"Item 10. It is my will that the churches to which I have bequeathed my property shall use in worship Rouse's version of David's Psalms exclusively ; otherwise I will it to the United Presbyterian Church, under the same restrictions ; their church to be established on the same site above described at the corner of the field ; or if the church or parochial school at this place do comply with my conditions in respect to the use of the Psalms and consequently using the site, and the church at the Cross-Roads do

[Hegarty's Appeal.]

refuse to comply with the conditions of my will in respect to the use of the Psalms, then and in such case I revoke my will in this case of the Cross-Roads Church, and will all property left to said church to the United Presbyterian Church, to be used by them for the building and support of a church, &c."

There was no further residuary bequest.

The testator left to survive him his widow, but no issue; he left two brothers, James and William Hegarty, and a sister, Mary, the wife of Henry Whiteside; also the children of three brothers and one sister who were dead; a number of these children were married women, and one of them was a minor who had a guardian, but was not one of the plaintiffs in this bill.

On the 19th of February 1869 (Pamph. L. 144), an Act of Assembly was passed " to expedite the settlement of the estate of Samuel Hegarty, deceased, and authorize the sale of his real estate." The act recited the seisin of the decedent, his death without issue, but leaving a wife, the devises to religious societies, &c. It further recited that the devises to the religious societies were believed to be void as failing to comply with the statutes in such case made, and most of the estate was unproductive and expensive; that there being questions as to the title, litigation might result and delay the settlement of the estate, " and the widow and parties representing the same being desirous of changing the character of the property into personalty," and " under the peculiar circumstances the courts having no jurisdiction, and it being desired to leave the question of the rights to said property to be determined by the courts," it was therefore enacted that the executor, &c., of the decedent be empowered to sell, at " public or private sale, at his discretion, and for cash or upon time, all the real estate " of the decedent, and convey to the purchasers, who " shall hold the same * * * absolutely and free and discharged from any trust or condition under the will aforesaid, and for such estate as the said testator had therein, and free from any liability to see to the application of the purchase-money; and the said Samuel Hegarty, executor as aforesaid, when he shall have made sale of the said real estate, or any portion thereof, and shall have received the purchase-money and conveyed the premises so sold to the purchaser, shall make return of such sale to the Orphans' Court. of Clearfield county, under oath, describing the property sold, the amount for which it hath been sold, the date of the conveyance, and the name of the purchaser or purchasers; and he shall hold the said purchase-money in trust to pay, first, the expenses of carrying out the provisions of this Act of Assembly; secondly, to pay the debts of the testator, if any such there be; and, thirdly, to pay over the same to the parties legally entitled thereto under the will of the said Samuel Hegarty, deceased, under the order and decree of the Orphans' Court of Clearfield county, and not otherwise;" the executor to give bond

to be approved by a judge of the Orphans' Court, &c., before making the sales he shall file in the office of the clerk of the Orphans' Court of Clearfield county, a bond in ten thousand dollars, with at least two sureties, to be approved by one of the judges thereof, conditioned for the faithful performance of the trust hereby imposed.

The bill set out as above stated, and averred that by the Act of April 26th 1855 (Pamph. L. 332, 2 Br. Purd. 1477, pl. 22), relating to bequests to religious and charitable uses, the devises to the churches were void and that the property devised descended to the heirs at law of the decedent; that the executor claiming to act under the authority of the Orphans' Court had sold about 72 acres of the land of the decedent, being sufficient to pay all demands against the estate, including collateral inheritance tax, &c. They averred that the Act of 1869 was procured without the knowledge of the plaintiffs and against their will, "is in violation of their rights of private property and is unconstitutional and void." They further averred that the executor, under the authority of the Act of 1869, had sold about 300 acres of the decedent's real estate to William Albert, George Albert and Henry Albert for about $8000, and that he was about to sell other real estate of the decedent.

The prayers were:—

1. That the executor be enjoined from selling and conveying any of the real estate of the decedent under the Act of 1869.

2. That the Alberts be enjoined from paying over to the executor any money due on the sales to them till ordered by the court.

3. For a decree that so much of the will of the decedent as gives property to the churches or schools having been made within a month of his death was contrary to the Act of April 26th 1855, and void.

The answer of the executor admitted most of the material allegations of the bill. Further,

The executor averred that several of the tracts of land of the decedent were subject to vexatious, annoying and protracted litigation, which if successful would absorb them; that therefore their actual value was indefinite, and "the necessity for the early settlement of the estate by sale of the land without warranty, and the substitution of the proceeds therefor, was apparent in the opinion of counsel." He submitted the question of the devises being void to the court, but averred, under advice and belief, that it would descend to the heirs at law under a cloud on the title by reason of the probate of the will; that the money arising from the sale of the 72 acres had been expended. He averred that the Act of February 11th 1869 had been procured, with the consent and request of the widow, and under the advice of the counsel of the decedent, who had been such for twenty years, and knew all the difficulties of the titles, in good faith and for the best interests of the estate;

the plaintiff did not oppose its passage, but acquiesced in it for a long time, and many of the heirs were content with the action of the legislature.

He alleged, under information and belief, that the Act of 1869 was " not unconstitutional and void, nor is it in the slightest degree violative of the rights of private property, because it does not in any manner attempt to deprive them of any vested right, but simply authorizes the sale of the realty and substitutes the money therefor with the rights of the plaintiffs to their part thereof, under the distributive power of the proper court fully preserved ; because it was the only mode by which the title to the said realty could be freed from the difficulties thrown around the title to the lands by the probate and the record of the will of the testator, under which record the legal title thereto had passed away, from the plaintiffs and vested elsewhere, and they had acquiesced therein from the death of the testator until the filing of this bill, a period of more than six years; because it was for the best interest of the estate that the right and power to sell and dispose of these lands should vest in some one, and that they should at the very earliest moment practicable be disposed of in order to get rid of the complicated questions of location then and now existing, and in order to enable this court having jurisdiction of the subject-matter to distribute the moneys according to law, and to settle all questions of title thereto by the usual and proper proceeding; because it does not change the course of descent of any portion of the realty, or lessen or increase the share of any one of the parties plaintiffs ; because that under the peculiar circumstances surrounding the estate, the bequests and contingencies in the will of the testator, its probate and record, the prolonged acquiescence therein, the silence of the plaintiffs, and of the religious societies, it became necessary for the executor, to proceed to close up the estate, and this Act of Assembly, as he is advised and believes, is the only mode in which under those circumstances a title to any of the realty could be passed free from taint or doubt ; because that no power exists in the courts to substitute money for realty for the purpose of settling questions of distribution ; because that upon application to the courts to sell for any purpose within their power, the price obtained would have been vastly less than under this mode of proceeding, for questions both of title and location would depreciate the property ; because that under proceedings in partition among the heirs no satisfactory result could be attained by reason of the questions of location, and the uncertainty of title growing out of the same, and because that under all the facts and circumstances surrounding the case it was for the best interests of the estate, and there were no adverse interests to be considered and adjudicated, all of their rights being preserved for settlement before the proper judicial tribunal."

[Hegarty's Appeal.]

He admitted the sale of real estate to the Alberts for $8000, of which $1000 had been paid.

The United Presbyterian Church averred that they were ready to comply with the conditions of the devises, and that, as they believed, the property devised was vested in them; they therefore claimed the property devised, and were allowed to become parties defendant to the bill.

A replication was filed, and F. H. Murray, Esquire, appointed examiner and master; he made an elaborate and well-considered report. He found the facts substantially as contained in the bill and answer. He reported also that the devises to the churches were void under the Act of 1855; that the property devised descended to the decedent's heirs at law, and that it was not such a title as could be affected by the probate of the will. He reported further that the plaintiffs were not within the 7th section of the Act of April 22d 1856 (Pamph. L. 533, 1 Br. Purd. 407, pl. 12, relating to the conclusiveness of the probate of a will upon realty). The probate is conclusive only upon those who could contest that which is adjudicated by the probate, and that is the execution and not the contents of the will, as in a proceeding where the issue is *devisavit vel non:* Patterson *v.* Patterson, 6 S. & R. 55; Kenyon *v.* Stewart, 8 Wright 179; Warfield *v.* Fox, 3 P. F. Smith 385.

After stating his conclusion that the executor's appointment as such by the will gave him no control over the real estate after the devises fell, the master proceeded:—

"Was, then, the Act of February 11th 1869 constitutional? While the situation of this estate, at the time this act was passed, was in many respects similar to numerous other cases in which the legislature have interfered, and their action been sustained by the courts, yet it seems to have lacked some of the essential requisites on which such decisions of approval have in each case been passed. The master, after careful review of the authorities cited by both of the solicitors, is unable to find any case where a private act authorizing sale by the executor of decedent—the heirs the absolute owners—their consent wanting—no provision in the act itself to obtain their consent prior to sale or delivery of deed—the relation of trustee not existing, and the claimants of full age at the time the act was passed—no provision in the act itself subjecting the whole proceeding of sale to the control and supervision of the Orphans' Court—has been sanctioned by the Supreme Court, when the objection was raised by the heirs, they being absolute owners. On the other hand, some one or more of these conditions have several times been the cause of defeat of such Acts of Assembly.

" The Act of February 11th 1869 authorizing sale of the real estate of Samuel Hegarty, deceased, is such an act as the Supreme Court, guided by the principles laid down in Constitution of

[Hegarty's Appeal.]

United States; Amendments, art. 5; Constitution of Pennsylvania, art. 9; Norris v. Clymer, 2 Barr 284; Brown v. Hummel, 6 Id. 86; Biddle v. Starr, 9 Id. 461; Ervine's Appeal, 4 Harris 256; Ker v. Kitchen, 5 Id. 439; Kneass's Appeal, 7 Casey 87; Menges v. Dentler, 9 Id. 495, and many other authorities, would declare unconstitutional and void. Therefore, the authority which it confers upon Samuel Hegarty, executor, to control and dispose of complainants' interests in real estate of Samuel Hegarty, deceased, is invalid and illegal, and the complainants' rights to the present control and disposition of their real estate is not affected by the said Act of Assembly." * * *

Exceptions filed to the report, were overruled by the court (Mayer, P. J.), and the following decree made:—

"That so much of the will of Samuel Hegarty, Sr., deceased, as bequeaths property, either real or personal, to the Presbyterian Church at Cross Roads, the Old School Presbyterian Church, the United Presbyterian Church, and any other church or school in said will mentioned, having been made for religious or charitable uses, within less than one calendar month, to wit, seventeen days before the decease of said testator, is contrary to the Act of Assembly of Pennsylvania, entitled 'An act relating to corporations and to estates held for corporate, religious and charitable uses,' approved April 26th, A. D. 1855, is hereby declared and adjudged to be unlawful and void.

"That the Act of the General Assembly of Pennsylvania, approved February 11th, A. D. 1869, entitled 'An act to expedite the settlement of the estate of Samuel Hegarty, &c.,' * * * having been passed without proper consent or authority from many of the heirs or persons interested in the estate of said Samuel Hegarty, deceased, being persons over twenty-one years of age and owners in their own right of their respective interests in said estate, especially Mary Whiteside, James Hegarty, Jane Jordan, John M. Jordan (assignee of George Hegarty), Henry Hegarty, Joseph Hegarty, Mary Jane McCullough, Louis McCullough, Matilda Bell and Agnes Bell, the said Act of February 11th 1869, so far as respects the interests of said persons and of all others in like situation, in said estate, is hereby declared and adjudged to be unlawful and void."

The decree also enjoined the executor from selling and conveying any of the decedent's lands and from completing any sales theretofore made.

Samuel Hegarty appealed to the Supreme Court, and assigned the decree for error.

*W. A. Wallace*, for appellant.—The record would have shown that the will was duly proved after five years, the probate was conclusive, and it could not then be set aside by parol proof of the

date of the death of the testator. The probate of the will is a judicial act and it cannot be inquired into collaterally or impeached by parol testimony: Carpenter *v.* Cameron, 7 Watts 51; Holliday *v.* Ward, 7 Harris 485; Barker *v.* McFerran, 2 Casey 211; Kenyon *v.* Stewart, 8 Wright 179; Folmar's Appeal, 18 P. F. Smith 482; Wallize *v.* Wallize, 5 Id. 242.

After five years without caveat or action at law duly pursued, the probate of the will is conclusive that the title to the realty named therein has passed to those to whom it is thereby given and away from all persons claiming under the testator: Act of April 22d 1856, sect. 7; Warfield *v.* Fox, 3 P. F. Smith 382. There is no reason why the statute should bar the contest where fraud and undue influence are alleged, and not bar it where the " will as to the realty " is alleged to be invalid by reason of a statute: Redfield on Wills 519; Kenyon *v.* Stewart, 8 Wright 191; Gaines *v.* N. Orleans, 6 Wallace 642; Bailey *v.* Bailey, 8 Ohio 246; Crippen *v.* Dexter, 13 Gray 330; Allison *v.* Smith, 16 Michigan 405.

In the propounding a will for probate, the rights of all concerned or interested are involved. It is not a proceeding of party against party, but one intended to pass upon the testamentary qualities of the papers exhibited for probate, and to ascertain and adjudge the *status* of the estate. Being substantially one *in rem*, it would be conclusive against all the world while unrevoked. The rule which declares that a transaction between two contending parties ought not to bind the interests of a third, has no application to those cases where the object of the litigation is to ascertain and settle the state or condition of the subject-matter: Allen *v.* Dunday, 3 T. R. 125; Bernardi *v.* Motteux, Doug. 554; Tompkins *v.* Tompkins, 1 Story R. 547; Ennis *v.* Smith, 14 Howard 400; Stebbins *v.* Lathro, 4 Perk. 33; Canaan *v.* Greenwood, 1 Conn. 7; Pritchard *v.* Hicks, 1 Paige 270; Muir *v.* Trustees, 3 Barb. Ch. R. 477; McPherson *v.* Cunliff, 11 S. & R. 433; President *v.* Groff, 14 Id. 181; Bogardus *v.* Clarke, 4 Paige 623.

The complainants were those interested to controvert this will, and having failed to do so for five years, they are barred and concluded; they are out of possession. If they had possession of the land they might with more force argue that they were already in the enjoyment of all they claim and were not bound to regard the limitation placed upon them by the Act of 1856. They are outside of the class of cases which establish the position that one who is already in the complete enjoyment of all he claims cannot by a limitation law be compelled to resort to legal proceedings, for every one of those cases is predicated of actual possession by the party to be affected: Clark *v.* Trindle, 2 P. F. Smith 462; Williard *v.* Williard, 5 Id. 126; Leffingwell *v.* Warren, 2 Black.

599; Stewart *v.* Trevor, 8 Wright 374; De Moss *v.* Newton, 31 Indiana 217.

The Act of Assembly in this case was to unfetter the realty of conflicting titles and contingent interests and to convert realty into personalty, giving to the purchasers clear titles and the parties the full value of their interests. This is what is provided for by the Price Act of 1853, and is valid: Greenawalt's Appeal, 1 Wright 95; Burton's Appeal, 7 P. F. Smith 219; Ker *v.* Kitchen, 5 Harris 439; Norris *v.* Clymer, 2 Barr 277; Biddle *v.* Starr, 9 Id. 277; Martin's Appeal, 11 Harris 433; Fullerton *v.* McArthur, 1 Grant 232; Carter *v.* Commonwealth, 1 Id. 216; Stanley *v.* Colt, 5 Wallace 119.

*J. B. McEnally*, for appellee.—The devise was void under the Act of April 26th 1855: Price *v.* Maxwell, 4 Casey 23; McLean *v.* Wade, 5 Wright 266; Miller *v.* Porter, 3 P. F. Smith 292. The probate involves the validity of the execution: Patterson *v.* Patterson, 6 S. & R. 55. The real estate as to which the probate is conclusive under the Act of 1855 is such only as the testator has the power to devise to the person named in the will: Kenyon *v.* Stewart, 8 Wright 188; Warfield *v.* Fox, 3 P. F. Smith 385.

The legislature has no power, by a special act, intended for a particular case, to authorize one person to take, manage and sell the property of another without his consent, where that other person is owner in his own right, of full age, and capable in law of acting for himslef: Amendments to Constitution of U. S. art. V.; Constitution of Penn'a, art. IX., sects. 1, 9, 11; Brown *v.* Hummel, 6 Barr 86; Ervine's Appeal, 4 Harris 256; Kneass's Appeal, 7 Casey 87.

The opinion of the court was delivered, July 2d 1874, by

SHARSWOOD, J.—The first question which requires our consideration in this cause is whether the complainants in the bill filed below had any standing in court. They claimed as the heirs at law and next of kin of Samuel Hegarty, deceased, and as such entitled to a reversionary interest in the property in question. Their title depends upon whether they are or are not concluded by the probate of his will, and the lapse of five years without caveat and action at law under the Act of April 22d 1856, sect. 7 (Pamph. L. 533), from setting up the invalidity of the devises and bequests therein made to the United Presbyterian Church of North America.

By the eleventh section of the Act of April 26th 1855 (Pamph. L. 332), it is enacted "that no estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will attested by two credible and at the time disinterested witnesses, at least one calendar month before the

25 P. F. SMITH—33

decease of the testator or alienor; and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law." It is an undisputed fact that Samuel Hegarty, the testator, did die within one calendar month after the execution of his will. It was not indeed presented for probate until after a month from its date had expired, so that upon the face of the proceedings in the register's office, there was nothing to give notice to purchasers of the invalidity of the disposition to religious uses made in the will, which depends, therefore, entirely upon a fact *dehors* the will and the record of the probate. No purchaser has intervened, however, and no question can arise as to the consequence of this state of facts, if there had.

The words of the eighth section of the Act of 1856 are "that the probate of the register of the proper county of any will devising real estate, shall be conclusive as to such realty, unless within five years from the date of such probate, those interested to controvert it, shall by caveat and action at law, duly pursued, contest the validity of such will as to such realty." This language is certainly very broad and comprehensive, and if construed literally would include a devise of realty invalid for any cause whatever, though appearing upon the face of the will itself, for example, a bequest or devise for an immoral or unlawful purpose, or where there is a limitation to take effect beyond the period prescribed for prevention of perpetuities—or a clause restraining alienation by a devisee in fee, and many other similar cases which might be enumerated. In all such cases the devise or provision is pronounced to be illegal and void, and has never been supposed to prevent probate of the whole will. In the language of the English decisions, such questions are referred by the courts of probate to the courts of construction. It has not been and cannot be contended that the legislature designed to reach and conclude such questions. Looking at the old law and the mischief, we think it clear, that the remedial operation of the act should be confined to that mischief. The law undoubtedly was, that while the decree of a register or a register's court unappealed from admitting a paper writing to probate, conclusively established it as the will of the testator, not to be ever after drawn in question in any other court or proceeding as to the personal estate bequeathed or disposed of therein, it was only primâ facie evidence as to realty. At any period, then, apart from the bar produced by adverse possession for twenty-one years, by the Statute of Limitations, it was competent for any party in an action of ejectment or other proceeding to contest, not merely the factum of the will—its due and legal execution, but every other question which might be raised before the register, such as mental incapacity, fraud, duress or undue influence, and this, at a time when from the death of wit-

nesses, those interested to support the will might labor under very great disadvantages. Purchasers from devisees or from executors under a power of sale could never be entirely secure until the Statute of Limitations had barred all opposing interests, or two verdicts and judgments in ejectment had come to their relief.

This was considered and must be admitted to have been a serious mischief. "The main purpose of this section," said Mr. Justice Woodward in Kenyon v. Stewart, 8 Wright 189, speaking of the Act of 1856, "was to give to the probate of wills, after five years, the same conclusive effect as to real estate, which it has always possessed in England and here, in respect to personal goods. Though held to be primâ facie evidence of title, the probate with us has been open to contest indefinitely, or at least for any time short of the period at which the common law would set up a conclusive presumption in its favor. This was the mischief the statute meant to remedy. Innumerable titles throughout the Commonwealth depended, and always will depend, on the probate of wills. That probate, the foundation of so many titles, we treat as a judicial decree, and the legislature thought there ought to be a time when it should be no longer questionable. The act of which this section is a part was planned to assure the people of greater certainty of title, and to make them more secure in the enjoyment of real estate. It is founded on highest considerations of public policy. It is a statute of peace, security and repose. It is entitled, therefore, to a liberal construction from the courts."

If, then, the intention of the act was simply to put probates of wills as to realty after five years upon the same footing as probates of wills of personalty, let us consider the effect of such a probate upon the question of such an objection to validity as is here set up. If the probate as to a bequest of personalty to religious and charitable uses made less than a calendar month before the death of the testator, will not prevent the next of kin or residuary legatees from raising this contention, neither ought it to have that effect as to realty after the lapse of five years, without caveat and action at law. What is the jurisdiction of the register? It may be conceded that his adjudication as to all matters within his jurisdiction is conclusive, if unappealed from within the time allowed by law. By the Act of March 15th 1832, sect. 5 (Pamph. L. 135), he has jurisdiction of the probate of wills and testaments. By the thirteenth section of the same act, "it is provided that whenever a caveat shall be entered against the admission of any testamentary writing to probate, and the person entering the same shall allege as the ground thereof, *any matter of fact touching the validity of such writing*, it shall be lawful for the register, at the request of any person interested, to issue a precept to the Court of Common Pleas of the respective county, directing an issue to be formed upon the said fact or facts, and also upon such others as

may be lawfully objected to the said writing." The language of this section would seem at first blush to include the case of any invalidity rising from a matter of fact, yet the form of the precept which follows shows evidently that the legislature had in view only such matters of fact as enter into the question, whether the alleged testamentary writing was in truth, the will, the expression of the mind of the testator, not·whether its provisions were lawful or unlawful. The form of the precept prescribed, recites that " E. D. hath objected before our said register, that the said writing was procured by duress and constraint, stating the matters of fact objected," and directing that " an issue therein may be formed upon the merits of the controversy." Taking the whole of these provisions, it might very naturally be inferred that it was thought that every controversy of this character must relate to the whole of the testamentary writing propounded as a will. Yet in the reason of the thing, duress and fraud may relate only to a single clause, and even incapacity arising from monomania, may infect only part of the disposition, and there would be no ground of policy or principle of law which ought to strike down the whole instrument on that account. Accordingly, nothing is better settled in England than that the ordinary or ecclesiastical court has exclusive jurisdiction of the question, whether any particular clause is really a part of the will of the testator. This was solemnly determined by the House of Lords, the court of the last resort, in Allen *v.* McPherson, 1 H. of L. 191. That was an appeal from the decree of the Lord Chancellor, dismissing a bill for want of jurisdiction, which set up that a particular clause in the will had been inserted through a fraud practised upon the testator. It was held that it was exclusively within the province of the ecclesiastical court to determine what was the will of the testator, and whether the clause in question formed a part of it, and their determination of that question by the admission of the paper to probate, with or without that clause, was not open to be re-examined in any other court or proceeding. Other cases to the same effect are cited in 1 Williams on Ex. 330, and Mr. Redfield is of opinion that the English rule is applicable in this country : 2 Redfield on Wills 48. There is a dictum in Rudy *v.* Ulrich, 19 P. F. Smith 183, that " a will propounded for probate may be contested in whole or in part." That, however, is a mere dictum, grounded on the English cases, and expressing merely the opinion of the judge delivering the judgment, and not the *ratio decidendi* of the cause. Nor is it necessary absolutely to decide the question here. We may assume that where the contest is, whether a particular clause really forms a part of the will of the testator, as in the case of a fraudulent insertion or introduction, a legacy procured by. duress or undue influence, which are instances falling strictly within the issue *devisavit vel non,* it is in the power of the register to grant probate

of the rest of the paper without such clause as forming in truth no part of the will.  But it certainly does not follow from this that his jurisdiction extends to deciding upon the validity of any disposition upon any other ground, than that it is not in truth the voluntary act of the testator, even though such validity may depend upon some extraneous matter of fact.  In Baxter's Appeal, 1 Brewster 460, it was said, in the opinion of this court, that "though a writing propounded as a will may contain one or more dispositions of property unlawful or void for any reason, it by no means follows that it is not to be admitted to probate.  It may contain other useful provisions not at all affected by the cause of the alleged invalidity."  Coates v. Hughes, 3 Binney 498, is there cited.  That was the case of an afterborn daughter, in fact, the testator's only child, which it was contended operated under the Act of April 19th 1794, § 23, 3 Smith 152, as a total revocation of the will.  The court decided that such birth of a child was a revocation *pro tanto* only, leaving the provisions of the will unaffected as to the appointment of executors, and a power to sell for the payment of debts.  It is worthy of remark that the distinguished counsel for the defendant (Messrs. Sergeant & Rawle), who argued for the will, raised the very point which we are now considering, that the probate was conclusive ; which was disposed of by the court during the argument, by declaring that, as it was an ejectment for real estate, it had been settled in Vangorden v. Vangorden, a manuscript case found among the notes of Judge Smith, that the probate as to the real estate was only primâ facie.  There is some, although not a perfect analogy between the case of a will revoked in part by the subsequent birth of issue, and the case in hand.  Indeed, in such a case as Coates v. Hughes, that of an only child and no widow, all the dispositions of the will are superseded, except those modal only ; the child sweeps the entire estate.  There the analogy is perfect, a fact *dehors* the will made by statute a ground of invalidity.  In other cases it would be difficult to grant probate where the dispositions of the will were good as to some of the children, without passing upon the whole will.  It could not be done by striking out certain parts.  For this reason, McKnight v. Read, 1 Whart. 213 ; Young's Appeal, 3 Wright 115 ; and Edwards's Appeal, 11 Id. 144, cases of afterborn issue, and relating in part or in whole to personal property, where no point as to the conclusiveness of the probate was made, have no bearing on the question.

But in Price v. Maxwell, 4 Casey 23, which arose under this very Act of 1855, in a will both of realty and personalty, it was not suggested that the probate was conclusive as to the personalty, but the devises and bequests to a charity were both pronounced invalid upon a bill in equity in this court.  Such was the fact also in McLean v. Wade, 5 Wright 266, an action of debt brought to

recover a legacy which was decided to be void, the testator having died within a calendar month after the execution of the will.

In England there are many cases of wills of personal estate, admitted to probate in the Ecclesiastical Court, in which particular dispositions have been subsequently adjudged to be invalid on other grounds than that they did not truly express the will of the decedent. Thus in Shanley v. Baker, 4 Ves., Jr. 752, which was a bequest of a leasehold estate to a charity, it was held to fall under the statute upon that subject in England, 9 Geo. II., c. 36, and to pass under a general disposition of the residue. To the same effect is Page v. Leapingwell, 18 Ves. 463. These cases are not strictly analogous, because all gifts to charities by 9 Geo. II. had to be by deed executed twelve calendar months before the death of the testator, and without power of revocation. We are without any direct decision, as far as I can ascertain, but these cases all seem strongly to show that professional opinion sustains the view that the jurisdiction of the register in the probate of wills is confined to the question, whether the paper has been properly executed according to law, and is in point of fact the will of the alleged testator, leaving all other questions to subsequent decision if they should afterwards arise. We consider this doctrine as most in accordance with general principles, as well as the provisions of our statutory system.

A suggestion has been made to me by an eminent member of the Philadelphia Bar, with whom I conversed upon this point, and which, as it may occur to other minds, I deem it proper to notice. It is, that the statute raises a presumption *juris et de jure*, of either the mental incapacity of the testator, or of undue influence over him exercised by ministers of religion or others to produce the feeling that he might propitiate the Divine Being by appropriating his property to charitable or religious uses, and this often with great injustice to his family. In this view it might be held strictly to fall within the jurisdiction of the register. No doubt the legislature may have been influenced by such considerations in passing the act, which is not founded upon a general policy of striking down all gifts to such uses, but only such as may be made within a calendar month of death, most generally, therefore, in the last sickness, a period of mental weakness produced by bodily weakness, and when the mind, through the fear of death and the unknown hereafter, is more than ordinarily susceptible to such influences. There are arguments also drawn from the expediency of having all such questions speedily settled, and not postponed to a remote period, which strongly plead in favor of any view which would give this construction to the statute. Yet it seems to us too subtle a refinement to suppose that the legislature meant to create such a presumption. The act establishes an unbending rule, fixes an arbitrary period, and enacts that such dispositions of property,

whether by deed or will, shall be absolutely void. It could not have escaped their attention that while a will is of necessity revocable, a deed is irrevocable unless it contains a power. By the Statute of Geo. II., no disposition by will is good, and all dispositions by deed must be within twelve calendar months of the death of the testator, and contain no power of revocation. The same theory as that here suggested might have been applied in the construction of the English statute, but as we have seen, it has not. The probate has not been held conclusive as to personalty.

It has been contended also, that the Act of 1856 is to be regarded as a statute of limitation, applicable to all real estate devised by will. But statutes of limitation affect the remedy, not the title. This statute lays down a rule of evidence, making a judicial decree which was before primâ facie evidence only, after the lapse of five years without caveat or action at law duly pursued, conclusive. There are many other difficulties which stand in the way of regarding it as a statute of limitation. No reference to entry is made, and those interested to contest the disposition may have no right of entry during the five years by reason of a valid life or other less estate interposed. They may be in possession themselves. It has been held by this court that there are no exceptions to be implied to save the rights of persons laboring under disabilities: Warfield v. Fox, 3 P. F. Smith 382. There are undoubtedly practical difficulties in the construction of the words "caveat and action at law duly pursued," but either the exceptions must be implied to save the rights of those in possession, or whose right of entry has not accrued within the five years, or perhaps a form of action under the statute might be supported to decide the right. These difficulties must be left to be disposed of when they are presented.

It results, if this course of reasoning be sound, that the dispositions of the will of Samuel Hegarty, deceased, in favor of religious and charitable uses are void; that as to the property so disposed of he died intestate, and upon the death of his widow, it will pass to the plaintiffs below. They have a valid legal title to the reversion. As to them the executor of the will is an entire stranger. Can the legislature, then, without my consent, confer upon such an entire stranger to me a power to sell my property and to hold the proceeds as a trustee for me? Ervine's Appeal, 4 Harris 256, and Kneass's Appeal, 7 Casey 87, answer this question unequivocally in the negative. They certainly settle that the legislature had no power to authorize the sale of the property of parties sui juris and seised of a vested estate in the premises against their consent. It is true that several of the plaintiffs below were married women, but they were not minors, and with the consent of their husbands in the mode provided by law had full capacity to dispose of their property. The case, then, is

[Hegarty's Appeal.]

entirely distinguishable from Norris *v.* Clymer, 2 Barr 277; Sergeant *v.* Kuhn, Id. 393; Ker *v.* Kitchen, 5 Harris 433, and all that class of cases, where the trustees of the legal estate have been authorized to convert realty into personalty. Biddle *v.* Starr, 9 Barr 452, was where there was a clear right to a partition between tenants in common, yet because of the pendency of a contest in regard to the last will of one of them, the partition might have been hung up for an unreasonable time, had not the legislature interposed and provided a remedy. We hold, then, that the Act of February 11th 1869 (Pamph. L. 144), entitled "An act to expedite the settlement of the estate of Samuel Hegarty, of Clearfield county, deceased, and to authorize sale of his real estate," was unconstitutional, and that the court below was right in enjoining the executor from proceeding to make sale under it.

Decree affirmed, and appeal dismissed at the costs of the appellant, to be paid out of the estate in his hands.