# Baum's Estate.

*Jurisdiction, O. C.—Wills—Probate—Date of wills—Register of wills court—Jurisdiction.*

1. The jurisdiction of the Orphans' Court is limited. It possesses none inherently and exercises such only as is conferred or implied from legislation.

2. However inoperative a will may be with respect to some of its provisions, if executed in accordance with the requirements of the statute and the testator be of testamentary capacity, it is nevertheless a valid will.

3. The essentials of a valid will, that is a will entitled to probate, are, first, that it be executed according to statutory requirements and, second, that it be the free act of one having a sound and disposing mind, memory and understanding. These are purely questions of fact and are proper matters of inquiry before the register. When they affirmatively appear, the right to have the paper admitted to probate has been fully established.

4. The register of wills has no jurisdiction to determine in the first instance the date when a will was executed, and, therefore, he has no jurisdiction to affect the rights of a child of testator by determining whether or not the will was executed prior to or after the birth of such child.

5. The Orphans' Court has no jurisdiction to determine the date of the execution of a will, on appeal from a decree of the register of wills fixing the date of the execution of such will.

6. On appeal from a decree of the register of wills, admitting a will to probate, it appeared that testator had made a will bearing date August 2, 1911, that testator died January 17, 1916. The register of wills found that said will was executed August 2, 1911, and admitted it to probate. Testator was survived by a widow and a son who was born January 15, 1912. On appeal from the register's decree the Orphans' Court, after a hearing, found that the will was executed on August 3, 1912, and directed that the probate of the will as of August 2, 1911, be revoked, and that it be probated as of August 3, 1912. The son was not mentioned in the will and the effect of the decree of the Orphans' Court was to deny him any participation in the estate. *Held*, the Orphans' Court was without jurisdiction to revoke the probate of the will, and to direct its probate as of a different date, and its decree was reversed.

Argued Oct. 11, 1917. Appeal, No. 105, Oct. T., 1917, by John K. McClurkin, guardian of Richard R. Baum, a minor, from decree of O. C. Allegheny Co., April T., 1916, reversing decree of Register of Wills, fixing date of the execution of the will of Richard B. Baum, deceased, in Estate of Richard B. Baum, Deceased. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Reversed.

Appeal from decree of register of wills fixing date of the execution of the will of Richard B. Baum, deceased. Before MILLER, J.

The opinion of the Supreme Court states the facts.

The court revoked the decree of probate made by the register of wills and found that the will was executed on the 3d of August, 1912, instead of August 2, 1911. TRIMBLE, J., dissented. John L. McClurkin, guardian of Richard R. Baum, a minor, appealed.

*Error assigned* was the decree of the court.

*H. W. Mitchell,* of *McKee, Mitchell & Alter,* with him *James W. Collins,* for appellant.

*Thomas M. Marshall,* with him *Wm. McC. Herron* and *Thomas M. Marshall, Jr.,* for appellee.—The Orphans' Court had no jurisdiction to change the probate of the will of Richard B. Baum: Beatty's Est., 193 Pa. 304; Matthews v. Biddell, 8 Pa. Superior Ct. 112; Pauline Auberle, deceased, 50 P. L. J. 186; Lappe's Est., 52 P. L. J. 157; McAndrew's Est., 206 Pa. 366; Wimmer's App., 1 Wharton 96; Barklay's Est., Loomis' App., 10 Pa. 389.

OPINION BY MR. JUSTICE STEWART, January 7, 1918:

Richard B. Baum died testate January 17, 1916, leaving to survive him a widow and one son, Richard B. Baum. The will of the testator, written by his own hand, bearing date the 2d day of August, 1911, was duly probated by the register of wills February 4, 1916. By this will the testator gave his entire estate to his wife, and appointed her the executrix. Testator's son, Richard B., was born January 15, 1912, a little more than four months after the date appearing in the will as the date of its execution. The widow, Eugenia Rayburn Baum, on the 5th of April, 1916, appealed from the register's decree admitting the will to probate, and praying that the probate of the will be set aside, on the ground that notwithstanding the will asserts that August 2, 1911, was the date of its execution, it was in point of fact executed on August 2, 1912, and that it be probated anew

as of August 2, 1912. To this petition the guardian of
the son made answer denying the jurisdiction of the
court to adjudicate the matter averred in the petition,
and denying all knowledge of the actual date of the ex-
ecution of the will. After hearing proofs and allega-
tions, no issue having been requested, the Orphans' Court
entered the following decree: "And now, March 26, 1917,
the court being of opinion that the decree entered Febru-
ary 26, 1917, should more fully state its conclusions, it is
hereby ordered, adjudged and decreed that said decree
be vacated and set aside, and in lieu thereof, upon con-
sideration of the pleadings, testimony taken, and argu-
ment by counsel, it is ordered, adjudged and decreed as
follows, to wit: First, that the probate of the will of
Richard B. Baum, as of the date of August 2, 1911, be
opened, and that said probate is hereby revoked. Sec-
ond, that the evidence offered in this court is sufficient
to prove the execution of the will of said decedent as of
the date of August 3, 1912, and after the birth of his son.
Third, that after the execution of the said will and the
birth of his son, the testator republished the same paper
writing as his last will and testament. Fourth, that the
costs of this appeal be paid out of the funds of the estate.
And it is further ordered, adjudged and decreed that a
certified copy of this decree be filed as part of the probate
of said will and be recorded by the register of wills in the
proper will book. This decree and the probate of the
said will to have the same force and effect as if the said
original paper writing had been dated on the 3d day of
August, 1912." The effect of this decree, if sustained,
must be to disinherit the son who, by his guardian, is
here the appellant, since, by the will, if born prior to its
execution, he takes nothing, whereas, if born subsequent,
the statutory rule will prevail, which provides that
"when any person shall make his last will and testament,
and afterwards shall marry or have a child or children
not provided for in such will and die, leaving a widow
and child, and either a widow or child or children, al-

though such child or children be born after the death of
their father, every such person, so far as shall regard the
widow or child or children after-born, shall be deemed
and construed to die intestate, etc."

We are met at once with the question of the jurisdic-
tion of the court in the proceeding adopted to entertain
the appeal. The jurisdiction of the Orphans' Court, as
said in Shollenberger's App., 21 Pa. 337, is limited, if
regard be had to derivation of its powers, for it possesses
none inherently and exercises such only as are conferred
or implied from legislation; and it is true also as to the
subjects of its jurisdiction, for these are set down in the
statutes. Strange to say, neither in the opinion filed by
the learned judge of the Orphans' Court who presided at
the hearing, nor in the opinion filed by the other two
judges who sat in review of the case upon exceptions
filed, do we find any reference to this very serious ques-
tion. Jurisdictional power seems to have been assumed
by the court and the parties to the litigation. We shall
endeavor to point out as briefly as we can such features
of the case as remove it beyond the jurisdiction of the
Orphans' Court.

The right of appeal from a decree admitting a will to
probate is conferred by Section 13 of the Act of March
15, 1832, P. L. 135, in which it is provided that "when-
ever a caveat shall be entered against the admission of
any testamentary writing to probate, and the person en-
tering the same shall allege as the ground thereof *any
matter of fact touching the validity of such writing,* it
shall be lawful for the register, at the request of any per-
son interested, to issue a precept to the Court of Com-
mon Pleas of the respective county, directing an issue to
be formed upon the said fact or facts, and also upon such
others as may be lawfully objected to the said writing."

The essentials to a valid will—and by this we mean a
will entitled to probate—are, first, that it be executed
according to statutory requirements; second, that it be
the free act of one having a sound and disposing mind,

memory and understanding. These being questions of
fact purely, are proper matters of inquiry before the reg-
ister. When they affirmatively appear, the right to have
the paper admitted to probate has been fully established.
Following the probate, it is the right of any one inter-
ested to appeal from the decree of the register to the
Orphans' Court, one condition of such appeal, however,
is that the party demanding it shall allege as the ground
thereof some matter of fact touching the validity of such
writing. In the present case the one and only ground
alleged in support of the appeal was that the will in
question, though at the conclusion it recites, "Witness
my hand and seal this 2d day of August, year 1911," and
was probated as written, was nevertheless in fact exe-
cuted on the 3d day of August, 1912. If such averment
can be sustained, it must follow that the testator's son,
in whose behalf the appeal is taken, having been born
January 15, 1912, was not an after-born child, but was in
being when the will was executed, and therefore as to
him, the 13th Section of the Act of March 15, 1832, P. L.
135, is without application, and the mother would be en-
titled to the entire estate. Does such circumstance, if
established, touch "the validity of the will"? The pro-
bate is assailed on no other ground; the genuineness of
the will is admitted, as is the testamentary capacity of
the testator, which includes as well his freedom from all
restraint or undue influence. With these facts estab-
lished and undisputed, what was there then left that the
Orphans' Court had jurisdiction to inquire into? The
validity of the will? Certainly not, in view of these ad-
missions, for they embrace everything that enters into
the question of validity, everything that could have been
inquired into before the register in order to lay ground
for an appeal from his decree. Let the contention that
the testator made a mistake in the date of the execution
of the will be admitted, how does such mistake affect the
validity of the will? It was right here that the court
below made the fatal error of failing to distinguish be-

tween invalidity and partial inoperativeness. However inoperative a will may be with respect to some of its provisions, if executed in accordance with the requirements of the statute and the testator be of testamentary capacity, it is nevertheless a valid will. Many apt illustrations here occur. A testator by his will makes a charitable bequest, but dies within a month following the execution of the will, the will is not invalid for such reason, but is simply inoperative as to the charitable bequest, and even that is not a question for the register. A testator by his will devises real estate, or bequeaths something which after the execution of the will he disposes of, such circumstance does not invalidate the will, but simply makes the will inoperative to that extent. The cases we cite below put this beyond dispute. In Hegarty's App., 75 Pa. 503, on page 514, Mr. Justice SHARSWOOD, in discussing the Act of March 15, 1832, P. L. 135, which we have above quoted, says: "The language of this section would seem at first blush to include the case of any invalidity arising from a matter of fact, yet the form of the precept which follows shows evidently that the legislature had in view only such matters of fact as enter into the question, whether the alleged testamentary writing was in truth the will, the expression of the mind of the testator, not whether its provisions were lawful or unlawful. The form of the precept prescribed recites that 'E. D. has objected before our said register, that the said writing was procured by duress and constraint,' stating 'the matters of fact objected,' and directing that 'an issue therein may be formed upon the merits of the controversy.' Taking the whole of these provisions, it might very naturally be inferred that it was thought that every controversy of this character must relate to the whole of the testamentary writing propounded as a will. Yet in the reason of the thing, duress and fraud may relate only to a single clause, and even incapacity arising from monomania may infect only part of the disposition, and there would be no ground of policy or prin-

ciple of law which ought to strike down the whole instru-
ment on that account. Accordingly, nothing is better
settled in England than that the ordinary or ecclesias-
tical court has exclusive jurisdiction of the question,
whether any particular clause is really a part of the will
of the testator. This was solemnly determined by the
House of Lords, the court of last resort, in Allen v. Mc-
Pherson, 1 H. of L. 191. That was an appeal from the
decree of the lord chancellor dismissing a bill for want
of jurisdiction, which set up that a particular clause in
the will had been inserted through a fraud practiced
upon the testator. It was held that it was exclusively
within the province of the ecclesiastical court to deter-
mine what was the will of the testator, and whether the
clause in question formed a part of it, and their deter-
mination of that question by the admission of the paper
to probate, with or without that clause, was not open to
be reëxamined in any other court or proceeding........
There is a dictum in Rudy v. Ulrich, 69 Pa. 177-183, that
"a will propounded for probate may be contested in
whole or in part." That, however, is a mere dictum,
grounded on the English cases, and expressing merely the
opinion of the judge delivering the judgment, and not
the ratio decidendi of the cause. Nor is it necessary ab-
solutely to decide the question here. We may assume
that where the contest is, whether a particular clause
really forms a part of the will of a testator, as in the
case of a fraudulent insertion or introduction, a legacy
procured by duress, which are instances falling strictly
within the issue devisavit vel non, it is in the power of
the register to grant probate of the rest of the paper with-
out such clause as forming in truth no part of the will.
But it certainly does not follow from this that his juris-
diction extends to deciding upon the validity of any dis-
position upon any other ground, than that it is not in
truth the voluntary act of the testator, even though such
validity may depend upon some extraneous matter of
fact. In Baxter's App., 1 Brewster 451-460, it was said,

in the opinion of the court, that "though a writing propounded as a will may contain one or more dispositions of property unlawful or void for any reason, it by no means follows that it is not to be admitted to probate. It may contain other useful provisions not at all affected by the cause of the alleged invalidity": Coates v. Hughes, 3 Binney 498, is there cited. In Broe v. Boyle, 108 Pa. 76, it is said by MERCUR, Chief Justice: "It is true the register's jurisdiction in the probate of wills is confined to the question whether the paper has been legally executed as the will of the testator. It does not determine his title to the property, nor his power to devise or bequeath the same at the time, nor in the manner indicated by the will. Hence it was held, in Hegarty's App., 75 Pa. 503, in case of a devise for a religious use, and the testator died within a month after the date of the will, the heirs at law of the testator were not concluded by the Act of 1858 from claiming the property thus devised, although no caveat or action at law was entered within five years after the probate of the will. The probate does not give additional power to do an act which the testator was not authorized to perform, but makes conclusive such a disposition of his property as he was authorized to devise, and did devise, according to the forms of law." A more recent case, and one quite as directly in point, is that of Owens v. Haines, 199 Pa. 137, a case peculiarly apposite here because of resemblance on its facts, although it was an action in ejectment. A testatrix by her will had devised her entire estate to her husband. The plaintiff in the ejectment was an after-born and only child of testatrix and unprovided for in the will. The will had been probated as, written. Suit was subsequently instituted by the after-born child to recover against the husband's alienee. A recovery by the plaintiff in the court below was sustained by this court in an opinion delivered by the present Chief Justice, which covers every aspect of the present case. We quote from the opinion on page 141: "The will of appellee's mother

was admitted to probate on January 22, 1892. This suit was brought January 12, 1900, and no appeal having been taken from the decree of probate within five years, as provided in the Act of April 22, 1856, P. L. 532, the further objection is made to the appellee's right to recover, that the devise to the father had become absolute and the property had passed under his will, as therein directed. The paper presented to the register for probate as the will of Abi C. Shaw, was her will, *and that officer could not have refused to admit it to probate.* It had not been revoked by the birth of the appellee, but was still the will of the mother, the provisions of which, however, did not affect the appellee nor her right to inherit all the real estate of the testatrix subject to the life estate of the husband and father. There was, therefore, nothing in the decree of the register admitting this will to probate from which the appellee *could or should have appealed.* It was, we repeat, the will of her mother when admitted to probate, is so to-day, and always will remain such, except as to her child, as to whom, in the words of the statute, she died intestate. Within the five years, or after, at any time, the child, in disregard of this will, of no effect as to her, could have claimed, and can claim, from the mother's estate what the intestate laws gave her. Its probate was for the register. Its effect, under the statute, is, at all times, for the court in which that question may arise." The italics are our own.

In the light of these express authorities to the contrary, how can it be argued that this will was invalid because of the mistake in the date of its execution, even admitting this to be the case, and that any such circumstance gave jurisdiction to the Orphans' Court, on appeal from the register's decree, to revoke the probate? Adopting the language of the court in the case last cited, it is too clear for discussion that there was nothing in the decree of the register admitting the will to probate from which the appellee could or should have appealed; it was the will of the testator when admitted to probate, is so

to-day, and always will remain such, except as to her child, as to whom, in the words of the statute, she died intestate. It follows that the mother's petition for an appeal from the probate of this will should have been dismissed.

Another feature of this case calls for remark only as showing how the first mistake of law which we have heretofore discussed led to a still more unwarranted assumption of authority. The decree entered by the court revokes the probate of the will, on the ground that as proven it is not the will of the testator because it was not executed on the day that it purports to have been executed; it not only revokes the probate, but it directs that the same paper be re-probated with a change of date so as to avoid the operation of the 15th section of the Act of 8th of April, 1833, P. L. 249, by taking the appellant out of the class of after-born children. It was quite bad enough to revoke the probate of a will which it would have been manifest error for the register to refuse, but upon what conceivable principle can it be asserted that the Orphans' Court, having revoked the probate, had jurisdiction to direct, in its stead, the probate of a will made by the direction of the court after testator's death and which he never in his lifetime signed? That is what the proceeding comes to. If the court had power to direct the probate of a will in which it had changed the date of execution from that appearing in the will to another, it is impossible to see what, if any limitation can be placed to the exercise of such power. Why may it not extend to a change in the dispositive provisions of the will? The will as probated was either the last will of the testator, or it was not. If the latter, it was a worthless piece of paper into which no life or force could be infused by any judicial decree; if the former, it was sacred from all interference, except as some of its provisions were interdicted by legislation, and these latter, even though unenforceable, remained part of the will and do not in any way make it any the less the proper subject for probate.

"It would, perhaps," says SHARSWOOD, J., in Willard's App., 65 Pa. 265, "be a very convenient practice immediately upon the death of a decedent to have all possible questions which might arise upon the construction of his will and in the settlement and distribution of his estate, settled by a decree of the Orphans' Court in limine, and by way of anticipation and by an appeal to the Supreme Court from such a decree, have a final and conclusive determination of the subject. It would certainly save counsel a great deal of responsibility in giving advice. But the acts of assembly which confer jurisdiction on the Orphans' Court may be searched in vain for any such power. Without authority so derived we must say that the decree below or in this court on appeal would be inconclusive and possibly a snare. It would not be binding upon any of the parties; certainly not upon those of them not sui juris. Consent cannot give jurisdiction. Any opinion which we should express upon the proper construction of the will in this appeal would be merely extra judicial."

The fears expressed by counsel that, except as this proceeding be available in such a controversy as this, the truth can never be inquired into and the end of justice attained, will all disappear upon a careful study of the cases we have cited in this opinion. The decree is reversed.