ANNIE CLARK V. BENJAMIN FREDENBURG ET AL.

*Executor's bond—Liability for proceeds of executor's sale.*

43    263
c128    28

A probate court in passing upon an executor's account can decree that all debts and claims and administration charges on the estate have been satisfied, and determine the executor's liability to the estate and the amount left to a specified devisee. Such a decree, if no appeal is taken, is binding upon the executor, the devisee and all parties in interest, and cannot be attacked collaterally; and under it the executor must pay over to the devisee the legacy with accumulated interest, and if he does not, the sureties become liable on the executor's bond.

After an executor's sale of realty, made by order of the probate court, has been confirmed without opposition, the executor cannot refuse to obey its order to distribute the proceeds to the devisees on the ground that the sale was irregular; and in an action on his bond for such refusal this defense is not open to the executor or to his sureties.

An executor's bond covers all moneys received by him under color of his official authority.

Where the sureties on an executor's bond have been cited to appear and show cause why suit should not be brought upon the bond, and have acquiesced in the decision on the hearing, they are bound by it.

Appeal from Calhoun. Submitted April 8. Decided April 14.

BILL to enforce the payment of a legacy. Dismissed. Complainant appeals.

*George W. Lawton* for complainant.

*Wm. H. Porter* and *Miner & Stace* for defendants.

MARSTON, C. J. Complainant comes into a court of chancery for relief touching a legacy bequeathed her by her deceased husband. The defendants demurred specially, and upon a hearing thereon the bill was dismissed. Complainant appeals.

We think the present case may be disposed of upon a brief statement of some of the most important facts.

The executor, from the personal property and a sale of a part of the real estate of the deceased under an order of the probate court, received a large amount of money.    There were but few claims against the estate, and in obedience to an order of said court he afterwards appeared and rendered his account.    December 14, 1878, the court passed upon his account and "did determine and decree in substance that all the debts and claims and charges of administration of said estate had been paid and satisfied, and that there then was in the hands of the said executor, or for which he was liable to said estate, of the assets and avails thereof, the sum of $10,440.70 in money, and that $4000 thereof was given to your oratrix under the will of said deceased."    The bill alleges a refusal by the executor to pay over this sum so decreed, to the complainant, and his insolvency; that he and his sureties and the representatives of one of the sureties deceased were cited to appear and show cause why complainant should not have leave to prosecute the executor's bond for said legacy and the accrued interest thereon; that they did appear and oppose the granting of such leave, and that after a full hearing and examination of the matter by the probate court, leave to prosecute the surviving surety was granted; that an action has been commenced against the surety, and a claim filed against the estate of the deceased surety for the amount of complainant's claim.

No appeal has been taken from the order and decree of the probate court of December 14, 1878, or from the order granting leave to sue the surety.    Both remain in full force.    The decree of December 14th establishes the fact that the executor had received sufficient funds over and above all claims and charges against the estate to pay complainant's legacy in full, and also decreed that $4000 thereof was given to complainant under the will of her deceased husband.

That the probate court had jurisdiction in the prem-

ises there can be no question, and the decree so made is binding upon the executor, the complainant and all parties in interest.   If dissatisfied therewith they had a remedy, but not having pursued this, the decree is conclusive and cannot be attacked collaterally.   The amount in the executor's hands may have been larger, as now claimed, and the rights of complainant under the will may have been somewhat uncertain, both as to the interest she took and the funds from which it would have been payable (questions we do not pass upon), but all such questions, after the decree was made and permitted to stand, became and were settled thereby, and no longer remained open to controversy.   Under this decree it became the clear duty of the executor to pay over to the complainant her legacy, with the interest due thereon, and if he failed so to do, his sureties were liable on his bond.

It is said, however, that there were certain irregularities in the sale of the real estate, and therefore such questions should be settled, and if the sale is found invalid in consequence thereof, then this legacy should be made a charge upon the real estate.  We do not see how any such question can arise in any controversy between the complainant and the executor and his sureties.   The sale was ordered by the probate court.   It was made by the executor under and by virtue of the authority thus conferred, and he received the proceeds of such sale as and in virtue of his position as executor of the estate of the deceased.   The sale was confirmed, and no steps have been taken to question the title of the purchasers thereunder, and no claim is made by them; and we do not see how this complainant can be interested in raising any question as to the validity thereof under the facts of the case concerning her rights. Under such circumstances, the executor, when ordered by the probate court to distribute the proceeds, cannot refuse upon the plea that the sale was irregular.  Upon such a theory the sheriff, who had collected the amount of a judgment under an execution, could retain the pro-

43 MICH.—34.

ceeds if he could but show some irregularity or error, which if properly raised would have reversed the judgment or set aside the sale. The treasurer of a municipality could retain the taxes collected by him because illegally assessed, and so the doctrine might be carried over the entire field where parties have received funds under and by color. of their office,—a doctrine which if recognized would open the door to the grossest frauds and abuses and to endless litigation. It would be offering a premium to all such to commit errors in order that they might profit thereby. It does not lie either in the mouth of such persons or officers or their sureties to make any such defense. Their bond covers all moneys received under color of official authority. There may be exceptions to this rule, but the present case does not seem to come within them. *Burk v. Webb* 32 Mich. 178.

There is another answer to any such objection when raised by the sureties. They were cited to appear and show cause why the complainant should not have leave to sue the bond. In obedience thereto they appeared and were heard. If they were not responsible for the acts of their principal, they had an opportunity given them to show such facts; and if the decision of the court was adverse to them they had a remedy. They acquiesced in the decision and are bound thereby. Upon this question they have had their day in court.

All parties interested and who could have questioned the action taken by the probate court have acquiesced therein and are now bound thereby. We are of opinion that the rights and interests of the complainant are clearly defined and protected under the decree and proceedings in the probate court, and that no further or better relief could be given her in this case, and that there is therefore no necessity whatever for the present action.

For these reasons the decree dismissing the bill will be affirmed with costs.

The other Justices concurred.