(83 App. Div. 276.)

### JEWETT v. SCHMIDT et al.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. WILLS—TESTAMENTARY TRUST.
    Where a will provides that testator's daughter shall be paid the income on a certain sum, which shall be "set apart" in dividend-paying stocks and bonds, and on the death of such daughter the executors shall distribute the fund 'among her heirs after they reach the age of 21, and the executors are clothed with power to change the securities at discretion, though there is no express devise to the executors "in trust," and though they are not described as trustees, on a setting apart of such fund they become trustees, and continue to act as such, rather than as executors.

2. SAME—DEATH OF TRUSTEE—APPOINTMENT OF NEW TRUSTEE.
    Real Prop. Law, § 91, Laws 1896, p. 574, c. 547, provides that on the death of the trustee of an express trust the same shall devolve upon the Supreme Court, which shall appoint some one to carry on the trust in its behalf, and section 92 provides that the Supreme Court, on the resignation or removal of a trustee, shall appoint a new trustee in his place. *Held*, that on the death of a trustee the court should appoint some person not as trustee, but as its representative, to carry out the provisions of the trust.

Appeal from Special Term, New York County.

Suit by Elsie M. Jewett against Melinda P. Schmidt and another, individually and as administrators with the will annexed of the estate of George P. Pollen, deceased, and others. From a judgment (80 N. Y. Supp. 352) appointing a trustee of a trust fund, and directing an accounting, defendants, the administrators, appeal. Modified and affirmed.

In August, 1877, George P. Pollen died, leaving a last will and testament, and a codicil thereto, which were admitted to probate and letters testamentary issued to the executors named in the codicil. So much of the will

as is material to the question here presented reads as follows: "To my daughter Melinda I also give the interest or income as it accrues on two hundred thousand ($200,000) dollars during her natural life. The said sum to be set apart in such good dividend-paying stocks and bonds as may stand in my name at the time of my decease, and at the then market value of the same. And at her death I will that the said amount of two hundred thousand dollars go to her legal issue in equal portions after they severally reach the full age of twenty-one years." The will appointed Cornelius C. Colgate and Edward Colgate and the testator's two daughters, Ann Eliza Leggett, and one of the appellants, Melinda P. Schmidt, executors and executrices. The appointment of the two daughters as executrices was, however, revoked by the codicil, and power was given to the executors "to change the stock securities thereof as a measure of safety," and directed that the payments of income under the will be made monthly. Subsequently a suit was brought by the executors for a judicial construction of the will against the appellants Melinda P. Schmidt and Bache McEvers Schmidt, this plaintiff, and others, and all of the parties to this action who were then in being were made parties to that action, and were either served with a copy of the summons or appeared in the action by attorneys or guardians ad litem. That action was prosecuted to and resulted in a judgment which adjudged and determined, among other things, as follows: "And it is further ordered, adjudged, and decreed that the plaintiffs, as executors of the last will and testament of the said George P. Pollen, deceased, out of the one equal half part of the remainder of personal assets, in the next place, set apart the sum of two hundred thousand dollars, or so much thereof as the personal assets of the estate will allow, besides other claims, for the purpose of providing an income therefrom for the benefit of the defendant Melinda P. Schmidt, by setting apart stocks and bonds now held by the said executors at the present market value thereof, and including therein the one equal half part of the good dividend-paying stocks and bonds held by the said executors at the time of the death of the testator at the then market value thereof, and, in case of sale of any of such stocks, the stock or cash substituted therefor, and that the said executors may change the said stock securities at discretion; that the said executors pay the interest or income arising from such stocks and bonds so set apart to the said Melinda P. Schmidt in monthly payments during her natural life, and after her death that the said executors pay and distribute such stocks and bonds so held and to be retained by them, or such stocks, bonds, or other securities as may be substituted by the said executors in place of the securities so to be set apart, to and among the legal issue of the said Melinda P. Schmidt in equal portions after they severally reach the full age of twenty-one years." After the entry of this judgment, the said executors, pursuant to the directions contained therein, constituted and set apart for the appellant Melinda P. Schmidt a fund of $200,000, the income of which they regularly paid to her. Thereafter the executors commenced a proceeding in the Surrogate's Court of the county of New York for a final judicial settlement of their accounts as such, to which she was made a party, and the same was finally settled by a decree of the Surrogate's Court, and their commissions as executors were paid, and they were directed to set apart the fund of $200,000 to a separate account in their names as trustees for Melinda P. Schmidt and her children, and pay the income to her as directed in the will, and thereafter account as such trustees. They set apart the fund, paid the income as directed, and subsequently accounted as trustees, and were paid commissions, and in such accountings Melinda P. Schmidt was a party. On or prior to November, 1894, both of the executors died, and thereupon, upon the application of Melinda P. Schmidt, she and her son Bache McEvers Schmidt, were appointed administrators with the will annexed of the estate of George P. Pollen, deceased, and as such took into their possession, and thereafter retained, without accounting therefor, the stocks and securities constituting the trust fund of $200,000. The plaintiff, a daughter of said Melinda P. Schmidt, thereupon brought this action to compel her mother and brother to account for this property, and to have a trustee appointed in place of those named in her father's will, and who had died. She had an interlocutory judgment appointing a referee to take

and state the accounts, and naming the Morton Trust Company, of the city of New York, trustee, and it is from this judgment that the appellants have appealed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Barclay E. V. McCarty, for appellants.
Thomas J. Falls, for respondent Jewett.
Walter C. Low, for respondent Schmidt.

McLAUGHLIN, J.   The appellants insist that the judgment appealed from is erroneous, and should be reversed, principally upon the ground that under the will of George P. Pollen a trust was not created, and that was determined in the action brought to construe the will, which judgment is binding upon the parties to this action.   Whether or not a trust was created necessarily depends upon the construction to be given to the will and codicil when read and construed together.   It will be observed that there is no express devise to the executors in trust, nor are the executors described as trustees, but these facts are immaterial if the court can see from the other words used that the intent of the testator was to create a trust.   To create a trust it is not necessary to use the word "trust" or "trustee."   It is necessary, however, that words shall be used which will express clearly and intelligently the intention of the testator as gathered from all of the words used—that is, from his entire will—to accomplish that purpose.   Here, notwithstanding there is no express devise to the executors in trust, the testator refers in express terms to a trust which he has specifically created.   The executors were to have the management and direction of, and were entitled to the fund referred to, until the death of Melinda P. Schmidt, and when that occurred they were to distribute the same among her issue in equal portions after they respectively reached the age of 21 years.   This not only appears from the provisions of the will and codicil, but also from the judgment of the Supreme Court, which is binding upon all of the parties.   They were not only to have the management of the estate during that time, but they were clothed with power "to change the stock securities thereof at discretion, as a measure of safety."   They were, therefore, directed to hold the securities, to pay the income monthly, during the life of Melinda P. Schmidt, to her, and upon her death to distribute among her children; and, if they deemed it advisable in the meantime, they could sell the securities, and purchase others.   These duties were to be performed by them not as executors, but as trustees, and it is entirely immaterial by what name they were designated in the will.   Calling a person an executor does not make him such, if the duties which he is required to perform are such as do not pertain to that office; in other words, the act which the person does determines the capacity in which he acts.   There is a marked difference between the acts of an executor and the acts of a trustee.   The acts of an executor are similar to those which devolve upon an administrator.   His duties are to take possession of the assets of the testator, collect the out-

standing debts, sell the goods and chattels so far as necessary for the payment of debts and legacies and to pay the latter in accordance with the terms of the will. These are precisely the duties of an administrator, except that he is, after the payment of debts, under an order of the Surrogate's Court, to distribute the surplus to the widow, children, or next of kin of the deceased. If any other duties are imposed upon an executor, or any power conferred not pertaining to such duties, then a trust or trust power is created, and the executor becomes, in the execution of that power, a trustee or donee of a trust power. Matter of Union Trust Co., 70 App. Div. 5, 75 N. Y. Supp. 68. This distinction is pointed out by Mr. Redfield in his Surrogate's Practice (6th Ed. § 319), in which he states that the office of an executor and that of a trustee are distinct, notwithstanding the same person is appointed in both capacities. "In the former capacity," he says, "it is his duty to collect the property, and pay the debts and legacies. In the latter he is called upon to invest and manage a particular fund or trust estate in accordance with the directions of the will." It is alluded to in Hurlburt v. Durant, 88 N. Y. 126; the court saying:

"If any duties were imposed upon the executors, or any power conferred not pertaining to the duties of his office, a trust or trust power is created, and the executor becomes a trustee or a donee of trust power. And such powers are conferred and such duties imposed upon him, not as incidents to his office of executor, but as belonging to an entirely distinct character— that of trustee. And in all such cases the trust and executorship are distinguishable and separate."

In the will and codicil here under consideration the general scheme and purpose of the testator indicate what he had in mind, and that he intended there should be a period of time when the duties of his executors as such, so far as the fund of $200,000 set apart for the benefit of his daughter Melinda was concerned, should terminate, and that they should thereafter assume, for the benefit of his daughter and her children, the character of trustees of such fund. When was that period of time, and what were the duties he contemplated casting upon his executors as trustees? It was when his estate had become so far settled that his executors could set apart the fund directed, and from that time their acts with reference to that fund were the acts of trustees, and not executors. They were directed to hold the fund, or reinvest it, as they saw fit. They were to receive the income from it, and pay the same to the daughter during her life, and thereafter divide the principal among her issue. The investment of this fund, and the reinvestment as occasion required; the collection of the income and payment to the daughter during her life; and the division among her issue upon her death—were all acts of trustees, and not the acts of executors. The question in this respect is much like Matter of Hecht, 71 Hun, 62, 24 N. Y. Supp. 540. There, the bequest was "to my brother Daniel Schneider * * * the interest of the sum of ten thousand dollars at the rate of six per cent. per annum, and to be paid semiannually by the below-named executor during his natural life." Upon the death of Daniel Schneider the $10,000 was directed to be divided among

the testator's brothers and sisters, and the court held that a trust was created, and its execution devolved upon the executor in express terms. Here it will be noticed that the "interest or income as it accrues on $200,000 during her natural life" is to be paid to the daughter, and at her death to her legal issue, and the executors are directed to pay the income monthly. Matter of Dewey, 153 N. Y. 63, 46 N. E. 1039, is also in point. There the language was: "I give, devise, and bequeath to my said wife, Caroline J. Dewey, the interest upon the sum of twelve thousand dollars, to be paid to her annually during the period of her natural life by my executors hereinafter named, said sum to be in lieu of her dower interest in my real estate;" and the court, in passing upon the question as to whether the executors were also trustees, said: The testator "does not in express language invest his executors with the powers of trustees. He does, however, require them to carry the provisions of his will into effect, and gives them the power to sell or dispose of his real or personal property as in their judgment may seem best. The third clause of the will required them to annually pay to his widow the interest upon $12,999. This necessitated an investment so that $12,000 would earn an income. This duty was imposed upon them as executors. It was an active duty, and such as usually pertains to the office of trustees, and such they must be deemed to be for the performance of these duties."

We are also of the opinion that the proper construction to be put upon the judgment rendered by this court in the action brought to procure a construction of the will is to effect that, after the trust fund had been created, the executors named in the will were to thereafter hold such fund as trustees, and not as executors. This seems to have been the view of all the parties, because thereafter the executors as such rendered a final account, and the subsequent accountings which were had by them were as trustees, and commissions were allowed to them as such; and the decrees of the surrogate in this respect seem to have been satisfactory to all of the parties, inasmuch as no appeals, so far as appears, were ever taken therefrom.

If we are right in the conclusion that the executors named in the codicil of Mr. Pollen, after the creation of the trust fund referred to, acted not as executors, but as trustees, of that fund, then upon their death the trust, pursuant to the statute, devolved upon the Supreme Court, and it became its duty to appoint some person to carry out the trust on its behalf, as provided in the ninety-first section of the Real Property Law, Laws 1896, p. 574, c. 547. Horsfield v. Black, 40 App. Div. 264, 57 N. Y. Supp. 1006. The judgment appealed from did not appoint a person to carry out the trust as provided in the statute, but instead appointed the Morton Trust Company trustee. The court had no power to make such appointment. A trustee of a trust fund can only be appointed under section 92 of the Real Property Law (Laws 1896, p. 575, c. 547), and that is when the trustee has resigned or been removed.

The judgment appealed from, therefore, must be modified by striking therefrom the provision appointing the Morton Trust Company trustee, and providing that upon the death of the original trustee the

trust, being unexecuted, vested in the Supreme Court, and appoint-ing the Morton Trust Company the representative of the court to carry out its provisions, and, as thus modified, affirmed, with costs to the respondent, payable out of the fund. All concur.