MACKENZIE v. UNION GUARDIAN TRUST CO.

1. EQUITY—JURISDICTION—WILLS — CONSTRUCTION — TRUSTS — PARTIES.

    Court of equity has jurisdiction to construe wills incidental to its general power over trusts and trust estates, and bill may be filed by anyone interested in determination of questions involved.

2. EXECUTORS AND ADMINISTRATORS—CONSTRUCTION OF WILL.

    Executor, in case he doubts his right to act, may apply to court of equity for construction of will.

3. EQUITY—EXECUTORS AND ADMINISTRATORS—TRUSTS—CONSTRUCTION OF WILL—ACCOUNTING.

    Granddaughter claiming grandfather's will created trust in her favor may maintain suit in equity for construction of will and for accounting, where executor denies trust and treats her as common legatee.

4. PARTIES—NECESSARY PARTIES.

Who are necessary parties in particular suit may depend upon allegations of bill of complaint and relief sought, and in some cases duty to join other parties may arise from relief sought by defendant.

5. SAME—MISJOINDER—NONJOINDER—STATUTES.

Statute providing that no action at law or in equity shall be defeated by nonjoinder or misjoinder of parties is remedial in character and is to be liberally construed (3 Comp. Laws 1929, § 14021).

6. SAME—NECESSARY PARTIES MAY BE JOINED—STATUTES.

Bill of complaint may not be dismissed because of nonjoinder of necessary parties; if other parties are necessary they may and should be joined (3 Comp. Laws 1929, § 14021).

7. EQUITY—JURISDICTION—DUTY OF COURT TO RETAIN JURISDICTION.

If, in suit in equity, trial court has jurisdiction on any well-settled ground of equity jurisdiction, it is its duty to retain case and grant complete relief.

8. TRUSTS—WHEN CREATED.

Trust is created when some estate, interest, or power in or affecting property of any description is vested in one person for benefit of another.

9. SAME—TESTAMENTARY TRUST—WILLS.

Provisions of grandfather's will bequeathing to granddaughter certain sum, which was to be kept invested as trust fund and one-fifth plus accumulations paid to her each year until whole amount was paid, *held*, to create trust in said fund in her favor.

10. EXECUTORS AND ADMINISTRATORS—CONSTRUCTION OF WILL—ALLOWANCE OF ACCOUNT—JUDGMENT—RES JUDICATA.

Allowance of annual account of executor or administrator is final and conclusive as to amount of money received by him and disbursements made by him, in absence of fraud or breach of trust, but has nothing to do with construction of will under which executor acts.

11. JUDGMENT—RES JUDICATA—ALLOWANCE OF ACCOUNT—PROBATE COURT—CONSTRUCTION OF WILL.

Generally, orders of probate court allowing annual accounts are final and conclusive as to all matters included therein, but they do not adjudicate what is not before court and not included in annual account, so that even allowance of final account may not amount to construction of will.

12. SAME—CONSTRUCTION OF WILL—DISTRIBUTION OF RESIDUE.

If, on conclusion of probate of estate, on allowance of administrator's final account, assignment of residue of estate is made in accordance with construction of will by probate court, then, court having to construe will in order to make proper order of distribution, such order, properly entered, is valid and binding as construction of will, if not appealed from.

13. SAME—WHEN QUESTIONS ADJUDICATED.

To constitute former adjudication of questions, it must appear that such questions were litigated as matter of fact, were submitted to and decided by jury, and were not collateral inquiries, but were crucial questions in former controversy.

14. SAME—QUESTIONS MUST BE CONSIDERED AND PASSED UPON.

Adjudication in favor of claim will not be conclusive of minor issues on which right depends unless it appears not only that they were submitted to jury but were considered and passed upon by them.

15. EVIDENCE—PAROL EVIDENCE—JUDGMENT.

Parol evidence is admissible to ascertain whether given question in issue was litigated, submitted, and decided, and, possibly, in some cases, whether it was material.

16. COURTS—PROBATE COURT DERIVES JURISDICTION FROM STATUTE.

Probate court derives none of its jurisdiction or power from common law, but must find warrant for all of its doings in statute.

17. JUDGMENT—RES JUDICATA—EXECUTORS AND ADMINISTRATORS—ALLOWANCE OF FINAL ACCOUNT.

Allowance of annual or final account of executor or administrator is conclusive as to all matters which are before court and are adjudicated therein, but is not final or conclusive and does not constitute adjudication in matters which were not before court on accounting, and which were not considered or passed upon in allowing said account.

18. SAME—TRUSTS—TESTAMENTARY TRUST—CONSTRUCTION OF WILL.

Where there was nothing in annual accounts of executor which showed that it had converted trust estate provided for in will to be set up for testator's granddaughter, or that court construed or intended to construe said will so as to permit executor so to do, allowance of said accounts does not amount to former adjudication or construction of will.

19. TRUSTS—TESTAMENTARY TRUST—EXECUTORS AND ADMINISTRA-
   TORS—FAILURE TO QUALIFY AS TRUSTEE.

   Where executor took possession of deceased's estate, but failed
   to comply with provisions of will setting up trust estate for
   testator's granddaughter, it is no defense, in suit by her
   against executor for construction of will and for accounting,
   that executor did not qualify as trustee.

20. EXECUTORS AND ADMINISTRATORS—WILLS—DEVASTAVIT.

   Failure of executor to perform his duty, which results in loss
   to beneficiaries of will, amounts to *devastavit,* whether from
   fraud, conversion, negligence, or maladministration.

21. SAME—TRUSTS—TESTAMENTARY TRUST.

   Failure of executor to set up trust fund for testator's grand-
   daughter, as provided for in will, resulting in loss to her,
   amounts to *devastavit,* for which executor is liable.

22. SAME—DAMAGES—LOSS TO BENEFICIARY.

   In suit by beneficiary under will against executor for construc-
   tion of will and for accounting, precise sum which beneficiary
   should receive is what she has lost by executor's failure to
   properly administer estate.

23. TRUSTS—ACCOUNTING—MISTAKE—WHEN GOOD FAITH DEFENSE.

   In suit against trustee for accounting, good faith is defense,
   where trustee, acting within limits of his powers, with proper
   prudence and diligence, commits mere mistakes or errors of
   judgment, but it is not defense where trustee disregards limits
   placed on his power by law or by trust instrument.

Appeal from Wayne; Kilpatrick (Arthur W.), J.
Submitted January 4, 1933. (Docket No. 13, Calen-
dar No. 36,850.) Decided April 4, 1933.

Bill by Ruth Day MacKenzie and another against
Union Guardian Trust Company, a Michigan corpo-
ration, to construe a will, establish and enforce a
trust, and for other relief. Decree for plaintiffs.
Defendant appeals. Affirmed.

*Emmons, Oren & Sleeper (David A. Howell,* of
counsel), for plaintiffs.

*Bulkley, Ledyard, Dickinson & Wright* (*Selden S. Dickinson* and *George Haggarty,* of counsel), for defendant.

Potter, J. Plaintiffs file a bill to construe the last will and testament of John C. Day, deceased; establish and enforce a trust alleged to be provided therein; for an accounting, to set up and establish such trust, cancel notes given to defendant for borrowed money, discharge a real estate mortgage securing the payment of such promissory notes, injunction, and other relief. From a decree for plaintiffs, defendant appeals.

Defendant denies all the material allegations of plaintiffs' bill of complaint, and joins to its answer a demurrer clause alleging plaintiffs are not in court with clean hands, and there is no equity on the face of the bill. Defendant and appellant claims the questions involved are:

*First.* Where, by will, a testator bequeathed the sum of $50,000 to be paid to a legatee in five annual instalments of $10,000 each, and directed the executor "to keep said trust fund invested so far as possible," was an intent manifested to prefer said legatee over other general legatees, so as to require the executor to establish a trust fund out of the first assets of the estate (which are insufficient to pay all legacies in full), and render it personally liable if it did not do so?

*Second.* Did the allowance of three annual accounts of the executor by the probate court, after proper statutory notice, in each of which accounts the treatment of all legatees on a parity was reported, adjudicate the propriety of such treatment?

*Third.* Did the defendant assume the duties of a testamentary trustee, and in law accept the trustee-

ship, despite the fact that it did not qualify as a testamentary trustee, and did treat the plaintiff as a common legatee?

*Fourth.* Are the proceedings here brought jurisdictionally defective by reason of the failure of the plaintiffs to join as parties hereto the other legatees and devisees named in the will?

Plaintiffs make a counter-statement of questions involved, as follows:

*First.* Does the language of the "third" paragraph of the will fulfill the requirements of a valid testamentary declaration of trust?

*Second.* Was it the duty of the defendant and appellant, as testamentary trustee, to obtain possession of the trust *res* as soon as possible, and then establish and administer the trust in accordance with the testator's directions?

*Third.* Was it the duty of the defendant and appellant, as executor, to undertake and complete the administration of the estate as expeditiously as possible?

*Fourth.* Would the property in the estate have been more than sufficient for all purposes had the appellant, in its dual capacity of executor and trustee, acted with the diligence required of it by law?

*Fifth.* Can the defendant and appellant avoid all liability for its failure to perform its duties as testamentary trustee by a showing that it has never formally qualified as such?

*Sixth.* Are the orders entered by the probate court for the county of Wayne, allowing the annual accounts filed by the defendant and appellant as executor, *res judicata* of the propriety of its conduct in failing to establish and administer the trust as directed by the testator's will?

John C. Day died testate November 28, 1927, leaving one direct descendant, Ruth Day MacKenzie, a granddaughter, one of plaintiffs. John C. Day had a substantial estate. By the third paragraph of his will he provided:

"I give and bequeath to my granddaughter, Ruth Day MacKenzie, the sum of $50,000, to be paid to her by my executor hereinafter named, as follows: $10,000 per annum, the first payment to be made one year from the date of my death. I direct my said executor to keep said trust fund invested so far as possible, and to allow the income therefrom to accumulate and to become part of the principal of said fund. In the event of the death of my said granddaughter before said fund is exhausted, I direct that said payments be made to her child or children, and upon the death of said child or children before said fund is exhausted or in the event such children predecease their mother, the balance of said fund shall become part of the residue of my estate to be disposed of as directed in paragraph six hereof."

Paragraph 7 of the last will and testament of John C. Day, deceased, provided:

"I hereby name and appoint the Union Trust Company, of Detroit, Michigan, to be the executor of this will, and request that no bond be required of it as such executor, and I hereby revoke all former wills by me made. It is my wish that my executor consult with my wife during the administration of my estate and that her wishes be carried out as far as possible."

This will was admitted to probate in Wayne county January 4, 1928, and administration of said estate granted to the Union Trust Company. An inventory of the property of the estate was made and an appraisal filed indicating a value of $469,-368.33 as of the date of the death of the deceased.

Subsequently there was a consolidation of the Union Trust Company and Guardian Trust Company into the Union Guardian Trust Company, defendant herein.

In the first and final accounts of defendant as special administrator, and first account as executor, of the will of John C. Day, deceased, filed November 30, 1928, defendant alleged it had paid all of the debts of said deceased and expenses of administration to date; had delivered the household furniture and effects to Ruth Fay Boomer Day, widow; paid to the widow the sum of $35,000 in accordance with the second paragraph of the will of deceased; that it has not carried out the balance of the provisions of the second, third, fourth, and fifth paragraphs of the will of said deceased in relation to legacies. Its account showed it paid to Ruth B. Day, assignee, the sum of $1,171.57. This account was allowed by the probate court January 3, 1929, and defendant, as special administrator, was discharged; the final account of the defendant as special administrator standing as its first account as executor.

The second account of defendant as executor was filed January 10, 1930. In it, it alleged it has made substantial payments on account of the legacies bequeathed under the last will and testament of deceased; that it had not been able to complete the administration of said estate and pay the legacies in full, inasmuch as it was necessary to reduce certain assets to cash, which, up to that time, it had not been able to do; that it was making every effort to dispose of the balance of the personal property for the purpose of paying the legacies in full. This account was allowed by the probate court February 13, 1930.

December 13, 1930, defendant filed its third annual account. In it, it alleged it has made substantial

payments on account of the legacies bequeathed under the last will and testament of deceased; had not been able to complete the administration of said estate and pay the legacies in full, inasmuch as it was necessary to reduce certain assets to cash, which it had not been able to do. That it was making every effort to dispose of sufficient property for the purpose of paying the legacies in full. This account was heard and allowed January 15, 1931.

The bill of complaint herein was filed January 16, 1932, and January 19, 1932, an amended bill of complaint was filed, after which defendant filed its fourth annual account as executor of the will of deceased, in which it alleged it had delivered specific household furniture and effects to Ruth F. Day Chandler, in accordance with the provisions of the second paragraph of the will of said deceased; that approximately 40 per cent. had been paid on account of the cash legacies bequeathed under the third, fourth, and fifth paragraphs of the last will and testament of deceased; that it had made a *pro rata* distribution of each dollar distributed, one-third to Ruth F. Day Chandler on account of the one-third personal property bequeathed to her under the second paragraph of the will, and two-thirds *pro rata* on account of the cash legacies bequeathed under the third, fourth, and fifth paragraphs of the will, as modified by the codicil.

Many other things were set up by the petition for the allowance of defendant's account. It was represented that some one of the following courses would have to be pursued in connection with this estate:

a. Sell remaining assets at public auction sale, if possible.

b. Legatees and devisees advance funds for the purpose of preserving the assets until sales can be made.

c.  Cash legatees and residuary legatees and devisees agree. to a division of the properties in payment of the legacies.

Further showing was made that a copy of this account had been mailed to the last known address of each of the cash legatees and devisees and residuary legatees and devisees of the will.

The elaborate showing made in defendant's petition for allowance of its fourth annual account was probably the result of the institution of suit by plaintiff.

The case was tried and an able opinion filed by the trial court June 4, 1932, finding:

"1.  That it was the intention of the testator to provide a trust fund as so expressed in paragraph three of the will.

"2.  That at the time of the probate of the will, there were ample funds in the estate out of which such trust fund could have been carved.

"3.  That the intention of the testator in relation to the trust fund should have been carried out with reasonable diligence.

"4.  That the proceedings in probate court were not *res judicata*.

"5.  That the failure of defendant to formally accept the trusteeship did not, under the circumstances, defeat the coming into being of the trusteeship, defendant having entered upon its duties as such, even though it did not follow the expressed wish of the testator.

"6.  That the instant proceedings are not jurisdictionally defective for failure to join all other legatees."

June 29, 1932, decree was entered substantially in accordance with the prayer of the bill.

A court of equity has jurisdiction to construe wills incidental to its general power over trusts and trust

estates. 40 Cyc. p. 1838. A bill may be filed by anyone interested in the determination of the questions involved. 40 Cyc. p. 1848.

"It is by reason of the jurisdiction of courts of chancery over trusts that courts having equitable powers, as an incident of that jurisdiction, take cognizance of and pass upon the interpretation of wills. They do not take jurisdiction of actions brought solely for the construction of instruments of that character, nor when only legal rights are in controversy. It is when the court is moved on behalf of an executor, trustee, or *cestui que trust,* and to insure a correct administration of the power conferred by a will, that jurisdiction is had to give a construction to a doubtful or disputed clause in a will. The jurisdiction is incidental to that over trusts." 3 Pomeroy's Equity Jurisprudence, § 1156.

This court has long recognized the right of an executor, in case he doubted his right to act, to apply to a court of equity for the construction of the will.

"If the executor was at all uncertain whether the testator meant to have the mortgage paid out of this legacy, his plain duty was to have filed his bill for a construction of the will. If the executor refused to pay the legacy, and there was a contention as to the true intent and meaning of the will, a court of equity should have been appealed to for a settlement of that question." *Byrne* v. *Hume,* 84 Mich. 185.

In *Dean* v. *Mumford,* 102 Mich. 510, it is said:

"A preliminary question is raised as to the jurisdiction, it being claimed by defendants that, except at the suit of a trustee or *cestui que trust* who asks a direction as to the execution of a trust, a court of chancery has no jurisdiction to construe a will or declare any or all of its provisions invalid. But, however this may be, the executors have answered in this case, and in terms submitted the question of the

construction of the will to the court. As it is undoubted that they might have invoked the jurisdiction of the court for that purpose by a bill, we think that, they having submitted the question, the court may properly maintain jurisdiction."

In *Bowers* v. *Smith,* 10 Paige Ch. (N. Y.), 193, it is held (quoting from syllabus):

"An executor takes the legal estate in the personal property of the testator as trustee for the legatees or next of kin, and the court of chancery having general jurisdiction in cases of trusts, any person having an interest in such property, either as a legatee or distributee of the decedent, may file a bill in that court, against the executor, to have the construction of the will settled, or to have the question as to the validity of any of its provisions determined, so far as concerns the interest of the complainant in the property; and to have a decree against such executor for such parts or portions of the property as he is legally and equitably entitled to receive."

In *Dudley* v. *Gates,* 124 Mich. 440, it is said of the construction of a will:

"If its provisions are of doubtful meaning, either the executor, legatee, or heir should apply to a court of chancery for their construction. *Byrne* v. *Hume,* 84 Mich. 185, 191. This has been the universal practice in this State, and is also the rule in other courts. 1 Woerner, Administration, § 222; *Hawes* v. *Humphrey,* 9 Pick. (26 Mass.) 350, 361 (20 Am. Dec. 481); *In re John's Will,* 30 Ore. 494 (47 Pac. 341, 36 L. R. A. 242); *Hegarty's Appeal,* 75 Pa. 503."

There is no doubt of the right of plaintiffs to maintain this suit to settle the construction of the will of deceased.

It is claimed necessary parties are not before the court. Who are necessary parties in a particular

suit may depend upon the allegations of the bill of complaint, and the relief sought. In some cases the duty to join other parties may arise from the relief sought by defendant.

3 Comp. Laws 1929, § 14021, provides:

"No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require."

This statute, broad and comprehensive in its terms, is remedial in character and liberally construed. *Gillen* v. *Wakefield State Bank,* 246 Mich. 158; *Windoes* v. *Colwell,* 247 Mich. 372. The bill of complaint may not be dismissed because of the nonjoinder of necessary parties. If other parties are necessary they may and should be joined.

If the trial court had jurisdiction upon any well-settled ground of equity jurisdiction it was its duty to retain the case and grant complete relief.

"When any matter becomes involved in a chancery suit, the necessities of justice and equity require that all persons and all things concerned in the controversy shall be brought before the court to have their respective interests charged or protected, and to end the controversy once for all." *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274, 280 (5 L. R. A. 226, 13 Am. St. Rep. 438).

"It is not, in general, within the province of courts of chancery to retain jurisdiction and grant relief, where the party has a clear, certain and adequate remedy at law. But it has often been held, and in New York and some of the other States it is regarded as a settled rule, that where a court of chancery has gained jurisdiction of a cause for any purpose of relief, it will retain it, for the purpose of

giving full relief." *Whipple* v. *Farrar*, 3 Mich. 436, 447 (64 Am. Dec. 99).

Since the decision in *Whipple* v. *Farrar*, *supra*, above cited, the rule that a court of equity having obtained jurisdiction upon any well-settled ground of equity will retain it to grant complete relief has become firmly established in the jurisprudence of this State. *Miller* v. *Stepper*, 32 Mich. 194; *Wallace* v. *Wallace*, 63 Mich. 326; *Drayton* v. *Chandler*, 93 Mich. 383; *Chase* v. *Boughton*, 93 Mich. 285; *George* v. *Wyandotte Electric Light Co.*, 105 Mich. 1; *Hall* v. *Nester*, 122 Mich. 141; *Scripps* v. *Sweeney*, 160 Mich. 148; *Culver* v. *Avery*, 161 Mich. 322; *Nelson* v. *Gibe*, 162 Mich. 410; *Allen* v. *Heft*, 200 Mich. 593.

Does the will of deceased create a trust? One definition of a trustee is:

"A person in whom some estate, interest, or power in or affecting property of any description is vested for the benefit of another." 1 Perry on Trusts (7th Ed.), § 1.

A trust is:

"An obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence." 1 Perry on Trusts (7th Ed.), § 2.

"A trust is in the nature of a deposition by which a proprietor transfers to another the property of the subject intrusted, not that it should remain with him, but that it should be applied to certain uses for the behoof of a third party." 1 Perry on Trusts (7th Ed.), § 2.

Sir Edward Coke's definition of a "use" has been adopted as an accurate legal description and definition of a "trust." In his words applied to a use,

"A trust is a confidence reposed in some other, not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land, for which *cestui que, trust* has no remedy but by subpœna in chancery." 1 Perry on Trusts (7th Ed.), § 13.

"The doctrines of trusts are equally applicable to real and personal estate, and the same rules will govern trusts in both kinds of property." 1 Perry on Trusts (7th Ed.), § 16.

Applying the definitions of a trust to the language of the will in question, it seems clear that the testator intended to make a bequest to plaintiff of $50,000, which $50,000 was to be kept invested, as a trust fund, so far as possible. That the income from this fund or the balance thereof which had not been paid over to the plaintiff in accordance with the terms of the will was to be added to the principal on hand, and from this $50,000 and the accumulations thereon plaintiff was to be paid the sum of $10,000, plus the accumulations on such trust fund as remained in the hands of the executor one year from the date of the death of the deceased, and that these $10,000 annual payments, plus the accumulations upon the amount of the trust fund remaining in the hands of the executor, were to be made each year until the whole amount of the principal of said $50,000 fund plus the accumulations thereon were paid to her.

It is strenuously insisted in the allowance of these annual accounts the probate court construed the will of testator and this constitutes an adjudication of plaintiffs' rights in the case at bar. In *Raseman* v. *Raseman*, 234 Mich. 237, it was said:

"The allowance of the annual accounts of testamentary trustees on notice is made by statute final and binding upon all parties in interest except for

fraudulent concealment or fraudulent misrepresentation.''

This holding is a mere restatement of the provisions of 3 Comp. Laws 1929, § 15900, which provides:

''The decree of the court having jurisdiction allowing any account of a trustee shall, except in cases of fraudulent concealment or fraudulent misrepresentation on the part of the trustee, be final and conclusive against all persons interested in such account and legally competent at the date of such decree, and against all other persons who are or may become interested therein, although unborn, unascertained or legally incompetent to act in their own behalf, if their general guardian or guardian *ad litem* has, after having been duly appointed, assented to such account, or has been heard thereon, or been notified of the hearing thereon; but such decree may be appealed from in the manner provided in the next section of this chapter.''

The rule as to the binding force and effect of the accounts of executors and administrators is entirely different. 3 Comp. Laws 1929, § 15922, provides:

''Every executor and administrator shall at the end of one year from the time of his appointment, and at least once in each year thereafter during the continuance of the administration, and at such other times as he may be directed by the probate judge, make and file in the probate court an accurate account of all moneys and other properties in his hands, as such executor or administrator, and of any expenditures and disbursements thereof; in case any such executor or administrator shall fail to make and file his account as herein provided, it shall be the duty of the probate judge to require and notify him so to do.''

By 3 Comp. Laws 1929, § 15567, an executor must give a bond ''to render a true and just account of his

administration to the probate court within one year, and at any other time when required by such court.''

3 Comp. Laws 1929, § 15923, provides for giving notice of hearing and examining an executor's account; and by section 15924 if the executor's account is not satisfactory to the probate court, he may be removed and some other suitable person appointed in his place. By section 15925 an executor may be liable on his bond for damages which may accrue by reason of his failure to account. Section 15927 provides that before an executor's account may be allowed, notice shall be given to all persons interested; but there is nothing in the statute relating to the allowance of accounts of executors and administrators making their allowance an adjudication of the terms of the will of deceased.

The allowance of an annual account of an executor or administrator is final and conclusive as to the amount of money received by him and the disbursements made by him, in the absence of fraud or breach of trust; but this has nothing to do with the construction of the will under which an executor acts. Annual accounts are final and conclusive against the executor, in the absence of fraud and mistake, as to receipts and disbursements where properly allowed after due notice.

Such annual accounts make it incumbent upon the executor to account for the inventoried value of the property received, and this may be shown by the receipt of an equivalent cash value, or by showing the property is worthless, has been destroyed by accident, without the fault of the executor, belonged to some other person, or upon a fair sale brought less than the appraised value thereof.

The rule is general that orders of the probate court allowing annual accounts are final and conclu-

sive as to all matters included therein, but they do not adjudicate what is not before the court and not included in the annual account. Their allowance is binding as to what is included therein, but is not binding as to what is not included. The allowance of a final account of an executor may be conclusive as to receipts and disbursements, but even the allowance of a final account may not amount to a construction of the will.

If, however, upon the conclusion of the probate of the estate of a testator, upon the allowance of the administrator's final account, the assignment of the residue of the property of the estate is made in accordance with the construction of the will of the deceased by the probate court, then, under such circumstances, the court having to construe the will in order to make a proper order of distribution, such order of distribution properly entered is valid and binding as a construction of the will, if not appealed from. *Dudley* v. *Gates,* 124 Mich. 440.

In *Cromwell* v. *County of Sac,* 94 U. S. 351, suit had been brought by one Smith against the county to recover judgment for the amount of coupons on bonds issued by defendant. The coupons belonging to plaintiff Cromwell were among those sued upon. There was judgment for defendant. Plaintiff then brought suit against the county to recover on the bonds to which the coupons, the validity of which had been adjudicated in the *Smith Case,* belonged. It was claimed the suit in the *Smith Case* constituted former adjudication in the *Cromwell Case.* The court said:

"There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between

the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

"Where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined."

In *Jacobson* v. *Miller,* 41 Mich. 90, the rule of *Cromwell* v. *County of Sac* was quoted and approved. The general principles of former adjudication were again extensively considered in *Bond* v. *Markstrum,* 102 Mich. 11, where the rule of *Cromwell* v. *County of Sac* and *Jacobson* v. *Miller* were again reaffirmed.

In *Bond* v. *Markstrum* it is said (p. 16):

"A former adjudication of the right of action, where the court had jurisdiction of the subject-matter and of the parties, is unquestionably a bar to an action for the same debt or claim, and is conclusive where the same subject-matter is sought to be again litigated, no matter how, between the same parties. In such case it is no answer to say, 'There were questions which were not raised or litigated.' "

But when a suit is sought to be maintained or defeated by showing former adjudication of questions upon which it depends, it must appear such questions

were litigated as a matter of fact, were submitted to and decided by the jury, and were not collateral inquiries, but crucial questions in the other controversy. An adjudication in favor of a claim will not be conclusive of the minor issues on which the right depends unless it appears not only that they were submitted to the jury but were considered and passed upon by them. According to the great weight of authority parol evidence is admissible to ascertain whether a given question in issue was litigated, submitted, and decided, and possibly in some cases whether it was material.

In *LeRoy* v. *Collins,* 165 Mich. 380, it is said:

"The first essential of the rule of *res judicata* is the identity of the matter in issue. The 'matter in issue' is defined to be 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleadings.' See Chand on *Res Judicata,* p. 35. If the same subject-matter comes in question in a second action in a court of last resort, it is bound by its own former decision. Bigelow on Estoppel (1st Ed.), p. 16.

" ' 'A matter or question, either of law or fact, is *res judicata,* or set at rest, as to adverse parties and their respective privies, if it was a material issue in the proceeding, directly involved, and not merely incidentally cognizable nor collaterally in question, and was adjudicated after a contest, by a final judgment on the merits.' 1 Van Fleet's Former Adjudication, p. 2."

"The probate court derives none of its jurisdiction or power from the common law, but must find the warrant for all of its doings in the statute. Its jurisdiction, powers, and duties are prescribed by law. * * *

"The probate court possesses the power to adjudicate and settle, by the decree it may make, an administrator's account; but after the merits have been thus passed upon, and the final adjudication put in the form of a decree, we find no authority given to

the probate court to review such decree, or to set the same aside." *Grady* v. *Hughes*, 64 Mich. 540, 545.

"There is nothing appearing in the probate proceedings to put in question the jurisdiction of the probate court to make the order on the accounting, and to include all that was in fact included. This being so, the attempt is now made to attack this judgment collaterally on the merits. This it was held in *Clark* v. *Fredenburg*, 43 Mich. 263, cannot be done." *Holden* v. *Lathrop*, 65 Mich. 652.

*Clark* v. *Fredenburg, supra,* involved a final account of an executor. Its allowance by the probate court was held to be conclusive.

*Shurte* v. *Fletcher,* 111 Mich. 84, holds an order of the probate court refusing to probate an estate because of a prior agreement in writing not *res judicata* of the terms of the contract. "There was nothing in the pleadings to indicate that the probate judge was called upon to construe the effect of the alleged settlement."

*In re Doyle's Estate,* 147 Mich. 544, holds the entry of an order settling and allowing the final account of the administrator and allowing his discharge "was not an adjudication by the court determining who was entitled to this estate and assigning the residue to such persons."

"The order of the probate court allowing the first account, being unappealed from, is conclusive upon appellant." *Nowland* v. *Rice's Estate,* 138 Mich. 146.

In *Calhoun* v. *Cracknell,* 202 Mich. 430, it is said:

"Under the statute cited, the probate court is invested with power, and, at the time of the disposition of the estate, has jurisdiction to construe a will and make disposition accordingly."

In *Thompson* v. *Thompson,* 229 Mich. 526, 531, it is said:

"The order on final settlement is the culmination of the entire procedure. The *corpus* of the estate is affected thereby. To make such order, the will must be construed and the rights of parties in the estate not disposed of by the will must be determined. It is an expression of the judgment of the court as to all matters properly included or necessarily involved therein. It may not be in accordance with the correct construction of the will or of applicable statutes, and yet it must be held to be binding and conclusive on all persons interested, if the notice of hearing required by the statute has been given."

In *Re Rahn,* 241 Mich. 29, it was held the allowance of the annual account of an executor was not *res judicata,* where there was fraud, and the court quoted *Raseman* v. *Raseman,* 234 Mich. 237, which did not involve the account of an executor but of a testamentary trustee, as to whom the allowance of an annual account is by statute made binding and conclusive, but which statute does not apply to the final account of an executor.

In *Riebow* v. *Ensch,* 220 Mich. 450, 454, it is said:

"The probate court in the course of the administration of estates has power to construe a will and the construction placed upon a will in the exercise of such jurisdiction is *res judicata* unless an appeal is taken."

In *Creek* v. *Laski,* 248 Mich. 425, 430 (65 A. L. R. 1113), it is said:

"A judgment is not *res judicata* unless the identical matter in issue in the subsequent proceeding was determined by the former adjudication." Citing *Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich. 14.

In *Harvey* v. *Security Trust Co.*, 242 Mich. 284, it is said:

"The probate court, by its order assigning residue to the trustee, recognized the existence of a valid trust and that the estate was to be disposed of according to the will 'so far as such will may operate upon it.' * * * The order of the probate court is in effect that the provision of the will is valid. The question has been adjudicated by the court of competent jurisdiction. Such adjudication may not be ignored. Nor is it open to collateral attack."

*Morton* v. *Johnston,* 124 Mich. 561, holds (quoting from syllabus):

"Items allowed to an administrator on a partial account, after notice to persons interested as required by 3 Comp. Laws 1897, § 9441, are not open to attack in the final accounting, except on the ground of fraud unknown at the time of allowance."

In *Porter* v. *Long,* 124 Mich. 584, it was held (quoting from syllabus):

"On a bill to compel an accounting by defendant in the respective capacities of surviving partner and executor of his partner's will, moneys wrongfully withheld by him from the estate as compensation for managing the firm business, which have never entered into his annual accounts as executor, should be charged against him, though such annual accounts have been duly approved by the probate court."

In *Re Ward's Estate,* 152 Mich. 218, 240, where an item in the executor's first annual account was appealed from, it was said:

"The second annual account involved only the new items not included in the first account and the adjudication thereon only affected such items. The order allowing the second account was conclusive as to the additional items included therein, provided

there was no fraud, omission of credit, or conceal-
ment of the true state of the account, in which event
the finding could be challenged upon a subsequent
accounting.''

In *Powell* v. *Pennock,* 181 Mich. 588:

''The final account of the administrator did not
mention the property involved in this litigation, and
can only be binding and conclusive as to the matters
therein contained.''

The rule to be deduced from the authorities is that
an annual or a final account of an executor or admin-
istrator is conclusive as to all matters which are be-
fore the court and are adjudicated in its allowance,
but the order of allowance is not final or conclusive
and does not constitute an adjudication in matters
which were not before it upon the accounting and
which were not considered by the court or passed
upon in allowing the account of the executor of the
estate.

There is nothing in the annual accounts of de-
fendant, heard and allowed before the bill in this
case was filed, which showed defendant had con-
verted the trust estate provided to be set up for
plaintiff Ruth Day MacKenzie, or that the probate
court construed or intended to construe the will of
deceased so as to permit defendant so to do. The
allowance of these annual accounts does not amount
to a former adjudication or a construction of the
will involved adverse to plaintiffs' claims.

Defendant failed to comply with the will of tes-
tator. It was its duty as executor to comply there-
with so far as possible; cause the $50,000 trust fund
to be set up and invested within the period of one
year. It is claimed defendant may not be held liable
as a trustee because it never qualified as such; that

the office of executor and trustee are separate and distinct, and defendant may not be held liable as a trustee when it did not act as such. *Gibney* v. *Allen,* 156 Mich. 301. That defendant did not qualify as trustee is no defense. It did act as executor. What plaintiffs complain of is the failure of defendant as executor to carry out the terms of the will of deceased; accept the trust created by the will or ask the court to appoint a trustee to carry out its provisions; keeping the money in its hands belonging to such trust, which should have been created and administered as such, as executor; converting it to the use of, and attempting to' administer it as a part of, the general estate of deceased, in violation of the terms of the will, in fraud of plaintiff's rights and to her injury and damage. It makes no difference, under the facts, whether defendant is treated as executor or trustee. It was the duty of defendant to carry out the terms of the will, properly, collect the assets of the estate, cause such trust to be set up, and to turn the sum of $50,000 bequeathed to plaintiff over to it, in trust, to be invested and the principal and accumulations thereon paid to plaintiff as provided in the will, and defendant is liable to plaintiff for not so doing.

These principles have been repeatedly asserted, affirmed, and enforced. *Jewett* v. *Schmidt,* 83 App. Div. 276 (82 N. Y. Supp. 49); *M'Gachen* v. *Dew,* 15 Beavan, 84 (51 Eng. Repr. 468); *Grove* v. *Price,* 26 Beavan, 103 (53 Eng. Repr. 836); *Pomroy* v. *Lewis,* 14 R. I. 349; *Campbell* v. *Clough,* 71 N. H. 181 (51 Atl. 668); *Bean* v. *Commonwealth,* 186 Mass. 348 (71 N. E. 784); *Caney* v. *Bond,* 6 Beavan, 486 (49 Eng. Repr. 914); *Pinkerton* v. *Sargent,* 112 Mass. 110; *Waring* v. *Darnall,* 10 G. & J. (Md.) 127; *Neff's Appeal,* 57 Pa. 91; *Cross* v. *Petree,* 10

B. Mon. (49 Ky.) 413; 28 Halsbury's Laws of England, pp. 117–139. The defendant as executor is liable as for a conversion of the interest of plaintiff in the trust fund provided for by the will of the testator (*In re Ryer*, 94 App. Div. 449 [88 N. Y. Supp. 52]), and liable for all breaches of the ordinary trusts which arise from its office as executor (*In re Marsden*, L. R. 26 Ch. D. 783). The failure of an executor to perform his duty, which results in loss to the beneficiaries of the will of the testator, amounts to a *devastavit*, whether from fraud, conversion, negligence, or maladministration. Bacon's Abridgment, title, Executors. The failure of the defendant as executor of the estate of deceased to set up the trust fund provided in the will of deceased amounts to a *devastavit*. 14 Halsbury's Law of England, p. 316. The precise sum plaintiff should receive and which defendant should pay is what the former has lost by the failure of the latter to properly administer the estate of deceased. *Perrin* v. *Lepper*, 72 Mich. 454.

Good faith is a defense, where a trustee, acting within the limits of his powers with proper prudence and diligence, commits mere mistakes or errors of judgment, but is not a defense where a trustee disregards the limits placed upon his power by law or by the trust instrument. *Gibney* v. *Allen, supra;* 28 Am. & Eng. Enc. Law (2d Ed.), p. 1063.

We find no reason to disturb the decree of the trial court, which is affirmed, with costs.

McDonald, C. J., and Clark, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.